PER CURIAM.
*554 In case no. 1130590, Kathryn L. Honea appeals from the denial of her motion to vacate an arbitration award entered in favor of Raymond James Financial Services, Inc. ("Raymond James"), and Bernard Michaud, an employee of Raymond James (hereinafter referred to collectively as "RJFS"). We affirm in part, reverse in part, and remand. In case no. 1130655, RJFS appeals the trial court's denial of its motion to dismiss for lack of jurisdiction; that appeal is dismissed.
Facts and Procedural History
Beginning in 1997, Honea opened several investment accounts with Raymond James. Honea and Raymond James executed a "client agreement" that included an arbitration provision. The arbitration provision stated, in pertinent part:
"Arbitration disclosures:
"Arbitration is final and binding on the parties.
"The parties are waiving their right to seek remedies in court, including the right to trial by jury.
"....
"Arbitration and Dispute Resolution: (a) In a dispute or controversy, either arising in the future or in existence now, between me and you (including your officers, directors, employees or agents and the introducing broker, if applicable) we agree to first endeavor to settle the dispute in an amicable manner by mediation at the request of either party. Thereafter, any unsettled dispute or controversy will be resolved by arbitration. ...
"(b) We agree that in any arbitration the arbitrators will resolve the dispute in accordance with applicable law and will be required to furnish us with a written decision which must explain the reasons for their decision. ...
"(c) A court of competent jurisdiction may enter judgment based on the award rendered by the arbitrators. We agree that both parties will have a right to appeal the decision of the arbitrators if the arbitrators award damages that exceed $100,000; the arbitrators do not award damages and the amount of my loss of principal exceeds $100,000; or the arbitrators award punitive damages. In each of the foregoing cases, a court having jurisdiction will conduct a 'de novo' review of the transcript and exhibits of the arbitration hearing."
On March 30, 2006, Honea filed a complaint in the Jefferson Circuit Court asserting that she had opened four accounts with Raymond James and that Michaud had acted as her financial advisor as to those accounts. She asserted that she had deposited approximately $1,200,000 in those accounts. She alleged that RJFS engaged in "abusive brokerage practices" in that her investments were not diversified, "were far too risky," and "were of poor quality." She claimed that, as a result of RJFS's actions, she lost $1,050,000. She thus sought damages for breach of contract, breach of fiduciary duty, negligence, wantonness, fraud, and violations of the Alabama Securities Act. Honea closed her accounts with Raymond James in April 2006.
Subsequently, Raymond James filed a motion to compel arbitration. The motion asserted that Honea did not oppose arbitration. The trial court granted the motion, and arbitration commenced. Michaud joined the arbitration proceedings.
The arbitration panel dismissed Honea's breach-of-fiduciary-duty, negligence, wantonness, fraud, and Alabama Securities Act *555 claims and proceeded to hear the breach-of-contract claims. On January 3, 2008, the arbitration panel entered an award in favor of RJFS. The arbitration panel found that "Michaud did not sufficiently know his client nor make sufficient inquiry to attempt to know his client, her holdings, and/or her investment experience. These failures contributed to losses in [Honea's] account." However, the arbitration panel "denied" Honea's breach-of-contract claims, stating that they were "barred by the applicable statutes of limitations."
On January 14, 2008, Honea filed in the Jefferson Circuit Court a pleading entitled "Motion to Vacate Arbitration Award." See Horton Homes, Inc. v. Shaner, 999 So.2d 462, 467 (Ala. 2008) (discussing the process for appealing an arbitration award under Ala. Code 1975, § 6-6-15, and noting, among other things, that "[a] party seeking review of an arbitration award is required to file a motion to vacate" that award). She alleged that the arbitration award "manifest[ed] a disregard of the law" by holding that her breach-of-contract claims were barred by the statute of limitations. See Birmingham News Co. v. Horn, 901 So.2d 27, 50 (Ala. 2004) (noting that, in an appeal of an arbitration award under Ala. Code 1975, § 6-6-15, a "manifest disregard of the law" was a ground available for reviewing the award), overruled by Hereford v. D.R. Horton, Inc., 13 So.3d 375, 381 (Ala. 2009) ("[W]e hereby overrule our earlier statement in Birmingham News that manifest disregard of the law is a ground for vacating, modifying, or correcting an arbitrator's award ...."). Additionally, Honea, citing Ala. Code 1975, § 6-6-14, challenged the impartiality of the chairman of the arbitration panel. See § 6-6-15 (providing that, in an "appeal" of an arbitration award, "the court shall set aside the award for one or more of the causes specified in Section 6-6-14...."), and § 6-6-14 (providing that an arbitration award is final "unless the arbitrators are guilty of fraud, partiality, or corruption in making it"). What occurred next is described in this Court's previous decision in Raymond James Financial Services, Inc. v. Honea, 55 So.3d 1161 (Ala. 2010) (" Raymond James I"):
"The trial court originally scheduled a hearing for Honea's motion to vacate the arbitration award for March 28, 2008; however, for reasons including the difficulty the parties had in obtaining a transcript of the arbitration proceedings, that hearing was repeatedly continued. On October 17, 2008, Honea filed an additional motion with the trial court asking it to conduct a de novo review of the arbitration award pursuant to paragraph (c) of the arbitration provision in the client agreement, quoted supra, which specifically authorized such a review by the trial court if 'the arbitrators do not award damages and the amount of [the client's] loss of principal exceeds $100,000.' On October 31, 2008, RJFS filed its response, citing Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), for the propositions (1) that manifest disregard of the law is not a valid ground for seeking the vacatur of an arbitration award; and (2) that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ('the FAA'), provides the exclusive grounds for seeking judicial review of arbitration awards in Alabama and parties may not expand those grounds by contract to provide for de novo judicial review of such awards. RJFS also repeated its argument that there was no evidence indicating that any of the arbitrators were biased in favor of RJFS.
"On November 7, 2008, the trial court held a hearing on Honea's motion to vacate the arbitration award. ... On July 20, 2009, the trial court issued an *556 order concluding that Honea was entitled to a de novo review of the arbitration award .... The trial court accordingly vacated the award that had been entered in favor of RJFS and scheduled a future status conference for the purpose of setting the matter for trial. On August 27, 2009, RJFS filed this appeal. See Rule 71B(g), Ala. R. Civ. P."
55 So.3d at 1163-64.
In Raymond James I, RJFS argued that the trial court could vacate the arbitration award only if one of the grounds specified in 9 U.S.C. § 10(a) of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), was established. This Court noted that, under the Supreme Court's decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008), the grounds enumerated in § 10 of the FAA were the only grounds upon which an arbitration award could be vacated under the FAA. However, Honea argued that an arbitration award may also be vacated on grounds outside those enumerated in 9 U.S.C. § 10 of the FAA if those other grounds were recognized by state law.
This Court agreed with Honea. Specifically, part (c) of the arbitration provision in this case, as quoted above, states:
"(c) A court of competent jurisdiction may enter judgment based on the award rendered by the arbitrators. We agree that both parties will have a right to appeal the decision of the arbitrators if the arbitrators award damages that exceed $100,000; the arbitrators do not award damages and the amount of my loss of principal exceeds $100,000; or the arbitrators award punitive damages. In each of the foregoing cases, a court having jurisdiction will conduct a 'de novo' review of the transcript and exhibits of the arbitration hearing."
This Court held:
"[T]he holding of Hall Street is applicable only in a federal court and ... the provision providing for de novo review of the arbitration award by the trial court is enforceable under state law .... However, because the trial court vacated the arbitration award before conducting the de novo review required by the arbitration provision and contemplated by the parties, its judgment is nevertheless reversed and the cause is remanded for the trial court to conduct a de novo review of the transcript and exhibits of the arbitration hearing and to enter a judgment based on that review."
Raymond James I, 55 So.3d at 1170.
On remand, the trial court conducted a de novo review of the arbitration award, vacated the award, and entered a judgment in favor of Honea in the amount of $1,169,113.35. RJFS appealed to this Court.
In Raymond James Financial Services, Inc. v. Honea, 141 So.3d 1012 (Ala. 2013) (" Raymond James II"), this Court held that the trial court lacked jurisdiction because the award had not been entered as a judgment of the court. Specifically, under § 6-6-15, either party may appeal to the circuit court from an arbitration award. A notice of the appeal must be filed with the clerk of the circuit court where the underlying action is pending. Thereafter, "the clerk or register shall enter the award as the judgment of the court." Furthermore, prior caselaw required that an arbitration award must be entered as a judgment before the circuit court could consider a motion to vacate it:
" ' "In Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala. 2008), this Court made clear that a judgment entered by the circuit clerk on an *557 arbitration award pursuant to § 6-6-15, Ala. Code 1975, 'does not become a final appealable judgment until the circuit court has had an opportunity to consider a motion to vacate filed by a party seeking review of the arbitration award.' 999 So.2d at 467. Furthermore, as this Court observed in Jenks v. Harris, 990 So.2d 878, 882 (Ala. 2008), the trial court's order on such a motion is void unless the circuit clerk has first entered the arbitration award as the judgment of the court.
" ' "...."
" 'We find no indication in the record that the clerk of the Shelby Circuit Court entered the arbitrator's order as the judgment of that court as required under § 6-6-15, Ala. Code 1975; thus, there is no final judgment from which Parham can appeal. Accordingly, the trial court's February 6, 2008, order is void and is hereby vacated, and this appeal is dismissed. See Harvey v. City of Oneonta, 715 So.2d 779, 781 (Ala. 1998) ("A judgment of a court without jurisdiction is void. An appeal will not lie from a void judgment." (citing, among other cases, Luken v. BancBoston Mortgage Corp., 580 So.2d 578 (Ala. 1991) )).' "
Raymond James II, 141 So.3d at 1013-14 (quoting Parham v. American Bankers Ins. Co. of Florida, 24 So.3d 1102, 1103-04 (Ala. 2009), quoting in turn Championcomm.net of Tuscaloosa, Inc. v. Morton, 12 So.3d 1197, 1199-1200 (Ala. 2009) (emphasis added in Raymond James II )).
There was no indication in the record that the arbitration award had ever been entered as a judgment of the trial court. Both sides acknowledged that that was the case. Given that "undisputed fact," we held that the trial court lacked jurisdiction to review the award on remand after Raymond James I. Therefore, we vacated the trial court's judgment as void, noted that a void judgment would not support an appeal, and dismissed the appeal. Raymond James II, 141 So.3d at 1014-15.
Thereafter, the case returned to the trial court. On October 15, 2013, seven days after this Court issued the certificate of judgment in Raymond James II, Honea filed in the trial court a motion for the circuit clerk to enter the arbitration award as a judgment of that court and also filed a notice of appeal from the arbitration award. The circuit clerk then entered the award on October 17. The notice of appeal sought review pursuant to Rule 71B, Ala. R. Civ. P. That rule, which became effective on February 1, 2009, provides the procedure for appealing an arbitration award and supersedes the procedures in § 6-6-15. See Committee Comments to Rule 71B. Honea's filings included a copy of the arbitration award and a copy of materials from the arbitration proceeding. She subsequently filed a motion to vacate the arbitration award and for a de novo review. RJFS responded with a motion to dismiss and an opposition to the motion to vacate, arguing, among other things, that the trial court lacked jurisdiction. Honea filed a reply, which she later supplemented.
The trial court ultimately held a hearing on January 17, 2014. At that hearing, the trial court indicated that it would first consider the jurisdictional issues raised by RJFS and would consider the "merits" of the motion to vacate at a later time.
On February 21, 2014, pursuant to "Rule 60(b)," Ala. R. Civ. P., Honea filed a motion for relief from judgment. In it, she suggested that her motion to vacate had been denied by operation of law on January 20, 2014, pursuant to *558 Rule 59.1, Ala. R. Civ. P.[1] Honea sought relief from that denial, arguing that it was the consequence of mistake, inadvertence, surprise, or excusable neglect.
On February 25, 2014, the trial court purported to deny RJFS's motion to dismiss. On February 28, Honea filed a notice of appeal (case no. 1130590). RJFS subsequently filed a notice of appeal from the denial of its motion to dismiss (case no. 1130655). The trial court then set a hearing for a de novo review of the arbitration award. Honea filed a motion in this Court requesting a stay of the proceedings in the trial court, which this Court granted.
Analysis
I. Case No. 1130655
RJFS appeals from the trial court's denial of its motion to dismiss. As mentioned above and discussed more thoroughly below, Honea's motion to vacate was denied by operation of law on January 20, 2014, more than a month before the trial court issued its order purporting to deny RJFS's motion to dismiss. When a postjudgment motion is denied by operation of law, the trial court "is 'without jurisdiction to enter any further order in [the] case after that date.' Ex parte Davidson, 782 So.2d 237, 241 (Ala. 2000). Any order entered after the trial court loses jurisdiction is void. Id." Ex parte Limerick, 66 So.3d 755, 757 (Ala. 2011). Further, "a void order will not support an appeal." Beam v. Taylor, 149 So.3d 571, 577 (Ala. 2014). Additionally, an interlocutory denial of a motion to dismiss generally is not appealable unless this Court has granted permission to appeal under Rule 5, Ala. R. App. P. See, e.g., American Suzuki Motor Corp. v. Burns, 81 So.3d 320, 321 (Ala. 2011) ; Conseco Fin. Corp. v. Sharman, 828 So.2d 890, 894 (Ala. 2001) ; and Robinson v. Computer Servicenters, Inc., 360 So.2d 299 (Ala. 1978). Because the trial court did not have jurisdiction to deny the motion to dismiss and because the denial of a motion to dismiss is also generally not appealable, RJFS's appeal (case no. 1130655) is due to be dismissed.
Nevertheless, RJFS makes several arguments challenging the trial court's jurisdiction. A lack of subject-matter jurisdiction on the part of the trial court, in turn, impacts the appellate jurisdiction of this Court. See MPQ, Inc. v. Birmingham Realty Co., 78 So.3d 391, 394 (Ala. 2011) (" 'A judgment entered by a court lacking subject-matter jurisdiction is absolutely void and will not support an appeal; an appellate court must dismiss an attempted appeal from such a void judgment.' " (quoting Vann v. Cook, 989 So.2d 556, 559 (Ala. Civ. App. 2008) )). Therefore, before proceeding further, this Court must determine whether the trial court had jurisdiction.
RJFS contends that the trial court lacked jurisdiction because, it says, Honea failed to satisfy various requirements of § 6-6-15 for initiating an appeal of an arbitration award under that Code section. Section 6-6-15 states, in pertinent part:
"Either party may appeal from an [arbitration] award under this division. Notice of the appeal to the appropriate appellate court shall be filed within 10 days after receipt of notice of the award and shall be filed with the clerk or register of the circuit court where the action is pending .... The notice of appeal, together with a copy of the award, signed by the arbitrators or a majority of them, shall be delivered with the file *559 of papers or with the submission, as the case may be, to the court to which the award is returnable; and the clerk or register shall enter the award as the judgment of the court."
First, RJFS contends that Honea did not file a notice of appeal until October 15, 2013, after the decision in Raymond James II, which was over five years after the arbitration award was issued and well past the period specified in § 6-6-15. Thus, RJFS maintains, the arbitration appeal in this case was untimely filed. Honea, on the other hand, argues that her January 14, 2008, "Motion to Vacate Arbitration Award" was sufficient to constitute a notice of appeal for purposes of § 6-6-15. We agree with Honea.
This Court "treat[s] a pleading and any other filing according to its substance, rather than its form or its style." Ex parte Bender Shipbuilding & Repair Co., 879 So.2d 577, 584 (Ala. 2003). A notice of appeal, in the context of the Alabama Rules of Appellate Procedure, "shall specify the party or parties taking the appeal; shall designate the judgment, order or part thereof appealed from; and shall name the court to which the appeal is taken." Rule 3(c), Ala. R. App. P. Honea's January 14, 2008, motion to vacate specifies that information. Further, we note that this Court has construed a motion to vacate an arbitration award as a notice of appeal for purposes of Rule 71B, which superseded § 6-6-15. Guardian Builders, LLC v. Uselton, 130 So.3d 179, 182 (Ala. 2013). See also J.L. Loper Constr. Co. v. Findout Partnership, LLP, 55 So.3d 1152 (Ala. 2010).[2] Thus, we conclude that, in substance, Honea's January 14, 2008, motion to vacate was a notice of appeal of the arbitration award.
In Horton Homes, supra, this Court recognized that Rule 4, Ala. R. App. P., "expand[ed] the statutory time period for taking an appeal of an arbitrator's award from 10 days from the date of receipt of notice of the award to 42 days from that date" and that a party seeking review of an arbitration award "is required to file a motion to vacate" that award. 999 So.2d at 466, 467. Here, Honea, within 42 days of the award, filed in the action pending in circuit court a motion to vacate that award, and such motions, this Court has recognized, can constitute a notice of appeal. Therefore, we hold that Honea timely filed a notice of appeal for purposes of § 6-6-15.
RJFS also contends that Honea, contrary to the requirements of § 6-6-15, did not file "a copy of the [arbitration]
*560 award" with her January 14, 2008, filings. RJFS contends that the filing of a copy of the award is a requisite for review under § 6-6-15 and that Honea's failure to comply with the requirement is a jurisdictional defect.
Although it appears from the record that a copy of the arbitration award was not included with Honea's motion to vacate, RJFS included a copy of the award with its February 14, 2008, response to Honea's January 14, 2008, motion to vacate the award. This was within the 42-day period required by § 6-6-15, as modified by Rule 4, Ala. R. App. P. Setting aside the issue whether a timely filing of a copy of the arbitration award is actually a jurisdictional requirement under § 6-6-15, it appears that the trial court nevertheless timely received a copy of the arbitration award, and there is no argument presented to this Court suggesting that, in this context, there is a material difference between Honea's filing the copy or the trial court's receiving it from another party. Thus, we hold that there is no merit to this argument.
Finally, RJFS contends that the arbitration award was not entered as a judgment of the trial court until October 17, 2013, after this Court's judgment in Raymond James II and over five years after Honea filed the January 14, 2008, motion to vacate. This, RJFS contends, was untimely and, as a result, the trial court did not obtain jurisdiction over Honea's appeal of the arbitration award.
As this Court noted in Raymond James II, the clerk's entry of an arbitration award under § 6-6-15 as a judgment of the circuit court is a jurisdictional requisite. However, the Code section does not specify a time in which this should occur. Additionally, this requirement that the arbitration award be entered was a duty of the circuit clerk and not an action Honea could perform. Finally, in numerous cases where it was found that the circuit clerk had failed to enter an arbitration award, this Court, rather than ordering a dismissal of the action, instead remanded the case for the circuit clerk to perform this duty. Raymond James II; supra ; Dawsey v. Raymond James Fin. Servs., Inc., 17 So.3d 639, 642-43 (Ala. 2009) ("Because a conditional judgment was never entered on the arbitration award by the circuit clerk, we have no alternative but to dismiss the appeal. ... However, ... we hereby direct the appropriate circuit clerk ... to enter the arbitration award as the judgment of the court. Following the entry of that conditional judgment, Dawsey ... should follow the procedures set forth in Rule 71B, Ala. R. Civ. P...."); and Horton Homes, supra. We see no authority for the proposition that the circuit clerk's failure to enter the award as required by § 6-6-15 until October 2013 denies the trial court jurisdiction in the instant case. Therefore, we see no merit in RJFS's argument.
We hold that the trial court had jurisdiction over Honea's motion to vacate the arbitration award.
II. Case No. 1130590
In case no. 1130590, Honea contends that the trial court erred in allowing the motion to vacate the arbitration award to be denied by operation of law. In Horton Homes, supra, this Court held that a motion to vacate filed in an appeal of an arbitration award under § 6-6-15 is in the nature of a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate a judgment; additionally, such a motion is subject to Rule 59.1, Ala. R. Civ. P., which deems that certain postjudgment motions are denied by operation of law if they are not disposed within 90 days:
" Rule 59(e), Ala. R. Civ. P., provides that a party has 30 days after the entry *561 of judgment to file a motion to alter, amend, or vacate that judgment. Accordingly, borrowing from the spirit of Rule 59(e), we hold that a party desiring judicial review of an arbitration award pursuant to § 6-6-15 must file in the appropriate circuit court a motion to alter, amend, vacate, or set aside the award within 30 days of filing the notice of appeal of the arbitration award and the clerk's entry of the conditional judgment based thereon. If that motion is timely filed, the circuit court shall then have 90 days, unless that time is extended by the consent of all the parties, to dispose of the motion. See Ala. R. Civ. P. 59.1 ('A failure by the trial court to dispose of any pending post-judgment motion within [90 days], or any extension thereof, shall constitute a denial of such motion as of the date of the expiration of the period.')."
Horton Homes, 999 So.2d at 468 (footnote omitted). See Ace Title Loan, Inc. v. Crump, 14 So.3d 94 (Ala. 2009), and Waverlee Homes, Inc. v. McMichael, 855 So.2d 493, 495 (Ala. 2003) (deeming a motion to vacate a judgment entered on an arbitration award to be a motion under Rule 59(e) and denied by operation of law pursuant to Rule 59.1 ).[3] Further, under Rule 71B, which replaced the procedure in § 6-6-15 and provides the procedure for appealing an arbitration award, a party challenging an arbitration award may file a motion to vacate under Rule 59, Ala. R. Civ. P., and such motions have been deemed by this Court to be denied by operation of law under Rule 59.1. See Terminix Int'l Co. v. Scott, 142 So.3d 512, 525 (Ala. 2013).
Honea argues that it was error for the trial court to allow her motion to vacate to be denied by operation of law. Specifically, in Raymond James I, this Court, pursuant to the terms of the arbitration agreement, directed the trial court to conduct a de novo review of the arbitration award. We stated that, under the arbitration agreement,
"[p]resumably, the trial court is to review the evidence presented at the arbitration proceeding and make its own findings of fact and conclusions of law and enter a judgment accordingly. It is without dispute that the trial court did not purport to undertake such a review in this case because the transcript and exhibits were apparently never submitted to the trial court for consideration and are not a part of the record. ... Accordingly, the order entered by the trial court vacating the arbitration award in favor of RJFS must be reversed and the cause remanded for the trial court to conduct the de novo review contemplated by the arbitration provision. ...
"...[B]ecause the trial court vacated the arbitration award before conducting the de novo review required by the arbitration provision and contemplated by the parties, its judgment is nevertheless reversed and the cause is remanded for the trial court to conduct a de novo review of the transcript and exhibits of the arbitration hearing and to enter a judgment based on that review."
Raymond James I, 55 So. 3d 1170. As noted in Raymond James II, the trial court conducted such a review and entered a judgment in favor of Honea. 141 So.3d at 1014. However, the trial court never obtained jurisdiction to vacate the arbitration award because it had not been first entered as a judgment. 141 So.3d at 1015.
*562 Honea contends that, after Raymond James II, the trial court was required to conduct another de novo review pursuant to the appellate mandate in Raymond James I; however, after the decision in Raymond James II, she argues, the trial court did not "expressly" consider the merits of Honea's motion. Instead, the motion was denied by operation of law pursuant to Rule 59.1. Thus, Honea contends, the trial court violated the appellate mandate of Raymond James I, and the denial is void.[4] See Ex parte DuBose Constr. Co., 92 So.3d 49, 58 (Ala. 2012) (holding that an order by a trial court that was outside the scope of an appellate mandate was void).[5]
It is unclear what additional consideration or review was required by the trial court-it had, after remand in Raymond James I, already conducted the mandated de novo review of the arbitration award, vacated the award, and entered a judgment in favor of Honea. Although RJFS subsequently argued that the trial court lost jurisdiction, it does not appear that any substantive facts or legal issues underlying any de novo review had changed or were different. In fact, Honea, in her motion for a de novo review filed after Raymond James II, noted that the trial court had already conducted a de novo review, had entered a judgment for Honea on "the precise issues now before the Court," and that the matter was "now ripe for adjudication." Thus, it does not appear that the trial court was required to undertake any new or additional actions to accomplish the mandate. In any event, the trial court did not enter a ruling on the motion to vacate, and it was denied by operation of Rule 59.1.
Generally, a trial court's failure to rule on a postjudgment motion-resulting in a denial by operation of law pursuant to Rule 59.1-is, alone, not reversible error. Howard v. McMillian, 480 So.2d 1251, 1252 (Ala. Civ. App. 1985) (holding that "[a]ny type of failure to rule upon such a motion during such period of time is adequate to bring Rule 59.1 into operation" and that an appellate court "will not place a trial court in error for its failure to rule upon a motion for a new trial within ninety days from its filing"), and Russell v. Russell, 610 So.2d 391, 392 (Ala. Civ. App. 1992) (" Rule 59.1... provides that a post-judgment motion that is not ruled upon by the trial court within 90 days of filing is deemed denied. Failure to rule does not amount to an abuse of discretion."). The operation of Rule 59.1"constitutes a denial of the motion," Williamson v. Fourth Ave. Supermarket, Inc., 12 So.3d 1200, 1204 (Ala. 2009), and the motion is "deemed denied." Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C., 77 So.3d 139, 145 (Ala. 2011). See also Forehand v. Forehand, 680 So.2d 380, 381 (Ala. Civ. App. 1996) ("The failure of the trial court to timely address such a motion constitutes a denial of the motion."). No distinction is made between a failure to rule that is *563 deliberate and a failure to rule that is inadvertent. Ex parte Johnson Land Co., 561 So.2d 506, 508 (Ala. 1990) ("[T]he operation of Rule 59.1 makes no distinction based upon whether the failure to rule appears to be 'inadvertent [or] deliberate ... [or] any other type of failure.' " (quoting Howard v. McMillian, 480 So.2d 1251, 1252 (Ala. Civ. App. 1985) )). Further, this Court "reviews the denial of a post-judgment motion by operation of law in the same manner as if the trial court had denied the motion by an order." King Motor Co. v. Wilson, 612 So.2d 1153, 1157 (Ala. 1992). Given that allowing the operation of Rule 59.1 cannot per se be error, that the operation of the rule constitutes a denial of the motion, that there is no distinction between a deliberate failure to rule and an inadvertent failure to rule, and that a Rule 59.1 denial is treated no differently than an express denial, the trial court's failure in the instant case to rule on Honea's motion to vacate, and the resulting denial of the motion by operation of law, is, under Alabama law, treated no differently than if the trial court had expressly denied the motion.
In the instant case, our decision in Raymond James I directed the trial court to rule on the motion to vacate based on its de novo review of the record in the arbitration proceedings. That instruction was followed, but the resulting judgment setting aside the award and entering an award for Honea was declared void in Raymond James II. After Raymond James II, there was nothing more for the trial court to do in relation to the de novo review but to enter a ruling: there was no change in the facts or substantive law; it was not necessary to again review the same record; all that was required was to rule on the motion. The ruling here-a Rule 59.1 denial by operation of law-is treated no differently from an express, deliberate order by the trial court denying the motion after its de novo review. To treat it differently would create a distinction between a Rule 59.1 denial (either inadvertent or deliberate) and a denial by an express order; to do so would be to review the Rule 59.1 denial in a different manner than "if the trial court had denied the motion by an order." King Motor Co., 612 So.2d at 1157.[6] The motion was ruled upon; therefore, we cannot presume that the trial court violated the appellate mandate of Raymond James I.
Honea also argues that the trial court erred in not holding a hearing on her motion to vacate. Under Rule 59(g), a party is entitled to a hearing on a Rule 59(e) motion if such a hearing is requested.[7] " Rule 59(g), Ala. R. Civ. P., provides that motions filed pursuant to Rule 59(e)'shall not be ruled upon until the parties have had opportunity to be heard thereon.' In other words, 'when a hearing is requested pursuant to Rule 59(g), the trial court errs in not granting a hearing.' "
*564 Ware v. Deutsche Bank Nat'l Trust Co., 75 So.3d 1163, 1172 (Ala. 2011) (quoting Unicare, Inc. v. Hood, 823 So.2d 1252, 1253 (Ala. 2001) ). Further, "[a] trial court's failure to conduct a hearing is error." Dubose v. Dubose, 964 So.2d 42, 46 (Ala. Civ. App. 2007). These principles apply in both an express denial of a postjudgment motion and a denial by operation of law. Further, in Terminix International Co. v. Scott, supra, this Court specifically applied those principles in the context of a denial by operation of law of a motion to vacate an arbitration award.
Nevertheless, the failure to conduct a hearing under Rule 59(g) is not always a reversible error:
"Although it is error for the trial court not to grant such a hearing, this error is not necessarily reversible error. For example, if an appellate court determines that there was no probable merit to the motion, it may affirm based on the harmless-error rule. See Rule 45, Ala. R. App. P.; and Kitchens v. Maye, 623 So.2d 1082, 1088 (Ala. 1993) ('failure to grant a hearing on a motion for new trial pursuant to Rule 59(g) is reversible error only if it "probably injuriously affected substantial rights of the parties" ')."
Flagstar Enters., Inc. v. Foster, 779 So.2d 1220, 1221 (Ala. 2000). Therefore, in the instant case, we must determine whether there was "probable merit" in Honea's motion to vacate that would have entitled her to a hearing. Terminix, 142 So.3d at 524 ; Flagstar Enters., Inc., 779 So.2d at 1221 ; and Dubose v. Dubose, 964 So.2d at 46 ("When there is probable merit to the motion, the error cannot be considered harmless.").
On appeal, Honea contends that there was "probable merit" to her motion to vacate the arbitration award because, she says, the arbitration panel erroneously concluded that her breach-of-contract claims were barred by the statute of limitations. Specifically, she argues that her claims were not barred because: (1) they "sounded in trust," and the statute of limitations for such claims would not have accrued until the time she closed her accounts, which was after her lawsuit was filed, and (2) her breach-of-contract claims accrued within the six-year statutory limitations period for such actions.
Honea argues that the arbitration panel erroneously concluded that her claims were barred by the statute of limitations because, she says, her claims "sounded in trust," and such claims would accrue, and the statute of limitations would not begin to run, until she closed her accounts in April 2006, after her complaint was filed in March 2006. See McCormack v. AmSouth Bank, N.A., 759 So.2d 538, 542 (Ala. 1999) (discussing authority holding that the statute of limitations does not run between trustees and beneficiaries so long as the trust relationship exists). Under this theory, Honea contends that there is "probable merit" in her claim that the arbitration panel erred in concluding that her claims against RJFS were time-barred. RJFS, however, argues that Honea is unable to demonstrate that the accounts in this case were a trust.
"This Court has held consistently that no particular form of words is required to create a trust, but that any instrument in writing signed by the parties, or party, at the time of the trust's creation, or subsequently, will suffice, if the nature, subject matter, and objects of the trust and manifested with reasonable certainty by the instrument."
Jones v. Ellis, 551 So.2d 396, 399 (Ala. 1989). The intent of the parties to create a trust must be manifested and proven: "There is no trust unless an intention to *565 create one is manifested. ... The burden of proof is on the party seeking to establish the existence of the trust and that burden is to present clear and definite evidence, without reasonable doubt as to the existence of the trust." Osborn v. Empire Life Ins. Co. of America, 342 So.2d 763, 765 (Ala. 1977). Furthermore, to create a trust, the settlor cannot retain title to the property of the trust:
" 'A conveyance in trust is incomplete unless the settlor has passed the title to the property to the trustee by delivery of the subject matter of the trust or of an instrument of transfer. On the other hand, if the conveyance in trust is completed by such delivery, the trust is not incomplete merely because the settlor reserves power to revoke or to alter the trust. There is sufficient surrender of control over the property if the settlor transfers the title to it to the trustee, even though he reserves power to undo what he has done. The surrender of control is sufficient even though the settlor reserves power to reassume the control.' "
Coosa River Water, Sewer & Fire Prot. Auth. v. SouthTrust Bank of Alabama, N.A., 611 So.2d 1058, 1062 (Ala. 1993) (quoting 1 William F. Fratcher, Scott on Trusts § 37 (1987)). Additionally, although a settlor can retain power over the administration of the trust, that power cannot amount to "ownership" of the trust estate: " '[W]here the powers retained by the settlor amount, in cumulative effect, to ownership of the trust estate, with such control over the administrative functions of the trustee as to make of him simply the settlor's representative, no valid trust is established.' " Coosa River, 611 So.2d at 1062 (quoting 76 Am. Jur. 2d Trusts § 29 (1992) ).
RJFS contends that there is no "probable merit" in any claim that there is clear and definite evidence that a trust was created in this case. In both her initial brief and reply brief, Honea's argument on appeal that her brokerage account amounted to a trust is that she "relinquished control of her funds" and "sole investment authority" to RJFS. RJFS, on the other hand, argues that it did not have "sole control" over the alleged trust property. Specifically, RJFS points to a document titled "Discretionary Client Agreement," which appears to be part of the contractual agreement in this case. It states in paragraph 8 that "[Raymond James] [i]s authorized to follow the instructions of [Honea] in every respect concerning [Honea's] account." RJFS also cites to portions of the record indicating that Honea directed Michaud to make certain trades with account funds.
RJFS also contends that there was no manifest intention to create a trust. In May 1997, Honea executed a "New Account Form." This form contains an area titled "Account Classification" that has several boxes from which to select. One box was for a "Trust" account; however, it was not selected by Honea.[8] Additionally, in the Discretionary Client Agreement, Michaud is appointed by Honea as her "Investment Manager." Those documents, RJFS argues, indicate that there was no intent to create a trust and, instead, that "Honea's discretionary account created a typical agency relationship."
Finally, RJFS argues that Honea has not met her burden in establishing that title to investments was transferred to Raymond James and points to documents *566 in the record that an account was instead titled in Honea's name. Further, paragraph 3 of the Discretionary Client Agreement states that the "manager" of the account "shall assume all investment duties with respect" to the assets held in the account and may take any action deemed appropriate, "with or without the consent of the client." However, the manager was "not authorized to withdraw any monies or securities from the account."
RJFS presents evidence indicating that Honea retained some control over the accounts, that there was no manifest intent to create a trust, and that RJFS did not obtain title to the trust property. Therefore, Honea has not demonstrated "probable merit" in her argument that the statute of limitations applicable to actions on trusts applies in her case; thus, she has not demonstrated that she was entitled to a hearing on that issue. Therefore, we conclude that, in this regard, the trial court's failure to conduct a hearing under Rule 59(g) was harmless. Flagstar Enters., Inc., 779 So.2d at 1221.
As to whether Honea demonstrated potential merit in her breach-of-contract claims, the analysis provided by both sides in their briefs is limited. Honea argues that her complaint, filed in March 2006, was filed within the six-year statutory limitations period as to any claims that accrued after March 2000. See Ala. Code 1975, § 6-2-34(9) (providing generally for a six-year statute of limitations in an action on a contract). Honea cites to the following provision in the client agreement:
"Applicable Regulations: (a) I understand and agree that every transaction in my account is subject to the rules or customs in effect at the time of the transaction which, by the terms of the rule or custom, applies to the transaction. These rules or customs include state and federal laws, rules and regulations established by state or federal agencies, the Constitution, rules, customs and usages of the applicable exchange, association, market or clearinghouse or customs and usages of individuals transacting business on the applicable exchange, market or clearinghouse."
(Emphasis added.) Under this provision, Honea contends that the rules of the Financial Industry Regulatory Association, Inc. ("FINRA"), applied to every transaction by RJFS in this case.
Honea states in her brief that Michaud had "a duty to know Honea, her knowledge, her background in securities, and her goals" and that his "[r]ecommendations for trades were required to be made based on that knowledge." According to Honea, in 1997 RJFS and Michaud created an investor profile that inaccurately characterized her as having extensive investment experience with stocks, bonds, and mutual funds when, in fact, Honea maintains, that characterization was untrue. Further, she could not recall Michaud ever discussing with her investment terms such as "growth," "high risk," "speculation," or "risk tolerance," and they did not discuss trading on margin. She further asserts that she never gave Michaud authority to put her portfolio "at risk" and that "he never advised her that he would engage in a high-risk strategy." The arbitration panel apparently agreed that Michaud had failed to properly "know" his client. It stated: "The Panel makes an express finding that Respondent Michaud did not sufficiently know his client nor make sufficient inquiry to attempt to know his client, her holdings, and/or her investment experience. These failures contributed to losses in [Honea's] account." However, the panel held that Honea's breach-of-contract claims were "all barred by the applicable statutes of limitations."
*567 On the other hand, RJFS argues that those claims were, as the arbitration panel found, untimely and that any breach of contract occurred more than six years before the complaint was filed. Specifically, RJFS points to evidence indicating that Honea's expert testified that her account was "unsuitable" in February 1999. Additionally, as noted above, Honea claims that RJFS created an erroneous investor profile in 1997. Thus, according to RJFS, those purported breaches of the contract occurred before March 2000, despite the fact that more harm resulted after March 2000. See AC, Inc. v. Baker, 622 So.2d 331, 335 (Ala. 1993) ("The statute of limitations on a contract action runs from the time a breach occurs rather than from the time actual damage is sustained."). Nevertheless, RJFS points out, Honea waited until 2006 to file her action.
To the extent that RJFS's breaches of its contractual duties were related to Michaud's failure to know Honea, the creation of an inappropriate investor profile, and an "unsuitable" account, it would appear such breaches occurred, and the statute of limitations began to run, long before March 2000. Thus, Honea has not demonstrated "probable merit" on those claims for purposes of a hearing under Rule 59(g), and the denial of the motion on those claims-without a hearing-is affirmed.
Honea further appears to contend, however, that RJFS also breached its contractual duties by making unauthorized or improper trades, that some of those trades occurred after March 2000, and that such activity constituted separate breaches of its duties. Specifically, her statement of facts notes that, after March 2000, Michaud improperly traded extensively on margin, which Honea contends made her losses much worse. Honea also claims that her account lost funds after March 2000 because of subsequent excessive, overly aggressive, and high-risk trading, as well as improper diversification. Honea, quoting expert testimony from the arbitration proceeding, states: "Under the standards and duties applicable to brokers, even on 'discretionary' authorization, 'a broker cannot make a recommendation [for a trade] that's unsuitable even if it's what the customer says that's what they want.' Michaud's duty as a broker was to determine whether Honea's portfolio and its holdings were suitable for Honea; that duty was constant." (Citations omitted.) Honea contends that she is seeking damages specifically for claims related to actions by RJFS that occurred after March 30, 2000.
RJFS maintains, citing Catrett v. Baldwin County Electric Membership Corp., 996 So.2d 196, 202 (Ala. 2008), that Alabama law does not recognize a "continuing contract" exception to the statute of limitations; thus, according to RJFS, "the multiple transactions in Honea's accounts constitute one alleged breach of contract." It argues:
"Alabama law is clear: '[i]f there is a single assent to a whole transaction involving several things or acts, there is only one contract....' AC, Inc. v. Baker, 622 So.2d 331, 334 (Ala. 1993) (internal quotation marks omitted). A single Client Agreement applies to Honea's discretionary account with Raymond James."
Further, as noted above, RJFS argued in its brief that the evidence demonstrated that breaches alleged by Honea occurred before March 2000. RJFS also contends that Honea knew of her investment losses and the types of investments in her accounts at the latest in February 2000 when she received her January account statement reflecting a loss of over $300,000.
Although it is true that one contract appears to govern this case and that RJFS
*568 breached its duties by failing to properly understand Honea's investment knowledge before March 2000, Honea contends that allegedly improper transactions-the excessive use of margin and overly aggressive, high-risk trading occurring after March 2000-represent independent breaches of the FINRA rules. Those claims accrued within the six-year limitations period before her complaint was filed. Further, any knowledge by Honea of her losses does not mean that the trading activity was proper. Thus, to the extent that any transactions after March 2000 would be considered separate breaches of contract unrelated to the failure to properly know Honea, her holdings, or her investment experience, or setting up an "unsuitable" account, Honea has demonstrated probable merit-for purposes of a Rule 59(g) hearing-that those claims would not be barred by the statute of limitations.
Honea also claims that Raymond James failed to properly supervise Michaud. She argues that under the FINRA rules Raymond James was required to supervise Michaud and that, although Raymond James approved Michaud for discretionary trading only as to mutual funds, Michaud nonetheless subsequently traded high-risk stocks in Honea's accounts.
RJFS points to evidence indicating that Michaud was approved for discretionary trading in 1996 and that a supervisor failed to review Michaud's trading in 1997, which would have occurred more than six years before the case was filed. However, nothing before us suggests that any purported failure by Raymond James to supervise Michaud that occurred after March 2000 would be barred by the statute of limitations; thus, Honea demonstrated probable merit to warrant a hearing under Rule 59(g) on this claim.[9]
Conclusion
Honea has demonstrated that, in relation to the certain breach-of-contract claims identified above, she is entitled to a Rule 59(g) hearing on her motion to vacate the arbitration award; thus, in case no. 1130590, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion. Further, for the reasons stated above, RJFS's appeal in case no. 1130655 is dismissed.
1130590-AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Stuart, C.J., and Bolin, Parker, Bryan, and Sellers, JJ., concur.
Shaw, J., concurs specially.
Murdock, Main, and Wise, JJ., dissent.
1130655-APPEAL DISMISSED.
Stuart, C.J., and Bolin, Parker, Bryan, and Sellers, JJ., concur.
Shaw, J., concurs specially.
Murdock, Main, and Wise, JJ., concur in the result.
SHAW, Justice (concurring specially).
I concur in the main opinion. I write specially to respond to Justice Murdock's dissenting opinion.
First, let this be abundantly clear: the appellant in case no. 1130590, Kathryn L. Honea, has in no way been deprived of the opportunity to have a de novo review of the arbitration award at issue in this case after this Court's remand to the trial court in Raymond James Financial Services, Inc. v. Honea, 141 So.3d 1012 (Ala. 2013) (" Raymond James II"). In fact, Honea specifically asked for such de novo review in her subsequently filed motion to vacate the arbitration award. If there is any error in the denial of that motion, she could have, *569 in this very appeal, directly challenged that denial on the merits.[10] Whether the arbitration provision in this case provides simply for an appeal of an arbitration award or for an "independent, judicial adjudication," as Justice Murdock contends, is of no consequence. 240 So.3d at 589. Honea has twice had the opportunity for a "de novo review" of the arbitration award directed by this Court's prior decision in Raymond James Financial Services, Inc. v. Honea, 55 So.3d 1161 (Ala. 2010) (" Raymond James I"), specifically, in the proceedings following this Court's decision in Raymond James I and in the proceedings following Raymond James II. Nevertheless, I will briefly discuss the issue.
Justice Murdock contends that the arbitration provision provides a "special avenue" for the circuit court to perform an "independent, judicial adjudication as to Honea's claims based on that court's de novo review of the record." 240 So.3d at 587, 589. I disagree. I believe that what is called for in this case is an appeal of the arbitration award with a de novo standard of review; I believe so because: (1) a party cannot seek judicial review of an arbitration award absent statutory authority, and such authority calls for an "appeal"; (2) the arbitration provision at issue in this case waives the right to seek remedies in court; and (3) the arbitration provision calls for what it describes as an "appeal."
This Court long ago stated: "In the absence of a statute authorizing it, an appeal, writ of error, or other revisory remedy, will not lie to any court from the award of arbitrators." Collins v. Louisville & Nashville R.R., 70 Ala. 533, 533 (1881). The Court in Collins noted, however, that, under § 3547 of the Code of 1876, now codified as Ala. Code 1975, § 6-6-15, an arbitration award could be entered as a judgment of the trial court, set aside, and then appealed. Id. As we later explained: "Th[e] method of appeal for review of an award as provided in [Title 7, § 843 of the 1940 Code, which is the successor to § 3547 of the 1876 Code, and is now § 6-6-15 ], is exclusive at law; it precludes all other challenges at law if notice has been given as mandated by said section." Moss v. Upchurch, 278 Ala. 615, 620, 179 So.2d 741, 745 (1965) (emphasis added).
Thus, presumably, for a court to exercise "review" of an arbitration award, there must exist statutory authority, and that authority is § 6-6-15. In Horton Homes, Inc. v. Shaner, 999 So.2d 462, 467 (Ala. 2008), this Court discussed the process for appealing an arbitration award under § 6-6-15 and noted, among other things, that "[a] party seeking review of an arbitration award is required to file a motion to vacate" that award after it has been entered as a judgment of the trial court.[11]
Honea and Raymond James Financial Services, Inc. ("Raymond James"), had agreed to arbitrate any claims between them instead of pursuing a remedy in court. The arbitration provision states: "The parties are waiving their right to seek remedies in court, including the right to trial by jury." The arbitration provision further provides:
"A court of competent jurisdiction may enter judgment based on the award rendered *570 by the arbitrators. We agree that both parties will have a right to appeal the decision of the arbitrators if the arbitrators award damages that exceed $100,000; the arbitrators do not award damages and the amount of my loss of principal exceeds $100,000; or the arbitrators award punitive damages. In each of the foregoing cases, a court having jurisdiction will conduct a 'de novo' review of the transcript and exhibits of the arbitration hearing."
(Emphasis added.) The express agreement is that the parties have waived judicial remedies, i.e., they cannot file an action "in court." This is contrary to any notion that the arbitration provision provides for an "independent, judicial adjudication" by a "court" to settle the disagreement between them. 240 So.3d at 589 (Murdock, J., concurring in the result in case no. 1130655 and dissenting in case no. 1130590). Further, according to the arbitration provision, the parties may have the circuit court "enter judgment" on the resulting arbitration award; this is just what § 6-6-15 and caselaw required in appeals from an arbitration award. The provision also provides that the parties then may "appeal" that judgment under certain circumstances if they so choose. If such an "appeal" takes place, then the reviewing court examines the record ("the transcript and exhibits of the arbitration hearing") of the arbitration proceeding. A standard of review for such "appeal" is provided-de novo. That this process is an "appeal" is demonstrated by the fact that the circuit court, as in any other "appeal," reviews the record and does not have a new trial or allow the parties to present evidence. See generally Raymond James I (reversing the trial court's order setting for trial Honea's challenge to the arbitration award and directing the trial court instead to conduct a de novo review). I submit that the language in the arbitration provision constitutes an agreement to waive the parties' traditional judicial remedies, to have an arbitrator decide their claims, to have the subsequent arbitration award entered as a judgment of the circuit court, and, if there is a challenge to the arbitration award, to allow an "appeal" to be heard by the circuit court by a de novo consideration of the record.
These post-arbitration-award procedures set out in the arbitration provision comply with the statutory scheme set out in § 6-6-15. Nothing in the arbitration provision suggests an attempt to create procedures outside those of the arbitration-award appeal process provided by law. I submit that the scheme found in the arbitration provision is completely contrary to allowing what Justice Murdock describes as a "new, independent adjudication" by a court or a "right to obtain, in substitution for the arbitration award, an independent judgment of the circuit court." 240 So.3d at 587, 588 (emphasis omitted). To say that what is described in this "appeal" as a de novo review of the record-as the arbitration provision describes it-is not really an appeal but a "new, independent adjudication" "to obtain, in substitution for the arbitration award, an independent judgment of the circuit court," id., which remedy by a court the parties were actually waiving, is to "mistakenly perceive[ ]" the express terms of the arbitration agreement. 240 So.3d at 586.
Justice Murdock states that "Honea never attempted to file an appeal of the arbitration award under the standards and procedures provided in §§ 6-6-14 and -15." 240 So.3d at 586. I respectfully disagree; as discussed in the main opinion, that is exactly what Honea filed on January 14, 2008. That filing makes no claim that Honea was seeking an independent adjudication; instead, she moved to vacate the award, which was the standard way *571 parties initiated an arbitration appeal under § 6-6-15. Horton Homes, 999 So.2d at 467 ("A party seeking review of an arbitration award [under § 6-6-15 ] is required to file a motion to vacate ...."). The motion to vacate even cited grounds under § 6-6-14 -that the arbitration panel was biased. Such a ground for setting aside an arbitration award is specifically stated in § 6-6-15, which incorporates § 6-6-14. Honea also contended that the arbitration panel that decided her claims "exhibited a manifest disregard of the law," a ground for an arbitration appeal under §§ 6-6-14 and -15 previously recognized by the decision in Birmingham News Co. v. Horn, 901 So.2d 27 (Ala. 2004). But see Hereford v. D.R. Horton, Inc., 13 So.3d 375, 381 (Ala. 2009) (overruling Birmingham News on this issue). Thus, Honea's January 14, 2008, motion to vacate clearly sought review of the arbitration award under the statutory authority of § 6-6-15 and by the procedures for such a challenge provided by caselaw, all of which is consistent with the language of the arbitration provision.[12]
It is true that the trial court had jurisdiction over the initial lawsuit filed by Honea in the trial court. This makes no difference when it comes to § 6-6-15 : that Code section explicitly recognizes that an action might first be filed in court before the arbitration occurs and thus directs that the notice of appeal from the arbitration award is to be filed in the court "where the action is pending." § 6-6-15. See also Dawsey v. Raymond James Fin. Servs., Inc., 17 So.3d 639, 641-42 (Ala. 2009) (noting that, although a trial court had jurisdiction over a case it stayed pending arbitration, the parties must still subsequently comply with § 6-6-15 in an appeal).
I do not accept the idea that the arbitration provision here calls for a review of the arbitration award under "common law" and, thus, that the provided statutory procedures in § 6-6-15 governing appeals for what the arbitration provision here describes as an "appeal" do not apply. For this to occur, it appears that a party need only disclaim the applicability of § 6-6-15 (or now Rule 71B, Ala. R. Civ. P.) and rely on language in the arbitration agreement specifying a post-arbitration-award procedure to support the idea that there is no "appeal" under § 6-6-15 or Rule 71B even if the language designates the procedure as an "appeal." Such a holding would drastically rewrite the law governing arbitration appeals. To provide that final arbitration awards may be "intercept[ed]," 240 So.3d at 588 n. 24, in undefined common-law challenges that fall outside the very specific strictures and procedures of § 6-6-15 or Rule 71B, and without any statutory authority, would render great uncertainty in the finality of arbitrations.
Because Honea's post-arbitration actions initiated an appeal under § 6-6-15, Raymond James II correctly held that the arbitration award had to be entered as the judgment of the trial court before it could be vacated. There is a great deal of authority requiring this result, and that authority at times casts this as an issue of a lack of "jurisdiction" even if the trial court had jurisdiction over the initial action that was subsequently sent to arbitration. See, e.g., Parham v. American Bankers Ins. Co. of Florida, 24 So.3d 1102, 1104 (Ala. 2009) (discussing a trial court's inability to set aside an arbitration award without first entering the award as a judgment of the *572 court under § 6-6-15 as a lack of "subject-matter jurisdiction"); Dawsey v. Raymond James Fin. Servs., Inc., 17 So.3d at 641-42 ("[N]otwithstanding the fact that the trial court had jurisdiction over the case when it stayed the case pending arbitration, ... the same trial court lacked jurisdiction to subsequently rule on a motion to vacate the resulting arbitration award until the circuit clerk entered the arbitration award as the judgment of the court."); Championcomm.net of Tuscaloosa, Inc. v. Morton, 12 So.3d 1197 (Ala. 2009) (same); Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala. 2008) ; and Jenks v. Harris, 990 So.2d 878 (Ala. 2008).
In any event, even if the holding in Raymond James II was incorrect-and I submit that it was not-that is ultimately of no consequence because, after that decision, Honea was placed in the very same position she was in the day she filed her first motion to vacate the arbitration award on January 14, 2008, and the day after this Court's previous decision in Raymond James I, which directed a de novo review. In other words, after Raymond James II, Honea asked for her de novo review. Nothing in Raymond James II required otherwise or impacted her ability to do so.[13]
MURDOCK, Justice (concurring in the result in case no. 1130655 and dissenting in case no. 1130590).
These cases come to us on appeal for the third time from the Jefferson Circuit Court. The October 2013 judgment at issue in these cases resulted from the recording, or entry, by the circuit court clerk of the 2008 arbitration award that had previously been rejected by that same circuit court in both Raymond James Financial Services, Inc. v. Honea, 55 So.3d 1161 (Ala. 2010) (" Raymond James I"), and Raymond James Financial Services, Inc. v. Honea, 141 So.3d 1012 (Ala. 2013) (" Raymond James II"). This entry occurred as a consequence of this Court's decision in Raymond James II and does not represent the de novo review of the 2008 arbitration decision to which Kathryn L. Honea is entitled. Because I believe Raymond James II was erroneously decided, I would overrule that decision and reinstate the judgment the circuit court entered based on the de novo review it conducted on remand from Raymond James I. For this reason, I respectfully dissent as to the Court's decision in Honea's appeal, case no. 1130590. That said, because the majority of the Court declines to take this approach and instead proceeds to discuss the merits of the statute-of-limitations issues relating to Honea's claims, I will extend this writing to do so as well.
I concur in the result as to the dismissal of the cross-appeal of Raymond James Financial Services, Inc. ("Raymond James"), and its employee, Bernard Michaud (hereinafter referred to collectively as "RJFS"), case no. 1130655, and to the denial of RJFS's motion to dismiss Honea's appeal.
*573 I. Arbitration "Appeal" Procedures
A. Facts and Procedural History
In May 1997, Honea opened multiple investment accounts with Raymond James. Honea and Raymond James signed a client agreement, which provided that all disputes between them would be submitted to arbitration. However, the arbitration agreement also contained the following provision:
"(b) We agree that in any arbitration the arbitrators will resolve the dispute in accordance with applicable law and will be required to furnish us with a written decision which must explain the reasons for their decision. ...
"(c) A court of competent jurisdiction may enter judgment based on the award rendered by the arbitrators. We agree that both parties will have a right to appeal the decision of the arbitrators if the arbitrators award damages that exceed $100,000; the arbitrators do not award damages and the amount of my loss of principal exceeds $100,000; or the arbitrators award punitive damages. In each of the foregoing cases, a court having jurisdiction will conduct a 'de novo' review of the transcript and exhibits of the arbitration hearing."
(Emphasis added.)
1. Original Circuit Court Proceedings
On March 30, 2006, after losing significant assets as a result of RJFS's allegedly wrongful brokerage practices, Honea sued RJFS in the Jefferson Circuit Court. Honea alleged violations of the Alabama Securities Act and sought damages for breach of contract, breach of fiduciary duty, negligence, wantonness, and fraud.
On April 7, 2006, RJFS filed an "Unopposed Motion to Compel Arbitration" of Honea's claims. In that motion, RJFS requested that the circuit court "enter an order compelling arbitration of this dispute and staying further proceedings in this action until arbitration has been completed" and alleged that Honea "[did] not oppose the relief requested in this motion." (Emphasis added.) The circuit court entered an order granting RJFS's motion. The order states:
"[T]he Unopposed Motion to Compel Arbitration filed by [RJFS] is hereby GRANTED and all parties herein are hereby ORDERED to submit this cause to binding Arbitration and file an Arbitration Report herein at the completion of said Arbitration detailing all findings and awards of the Arbitrator so this cause may be disposed of at said time. All proceedings in this cause are hereby STAYED pending said Arbitration."
(Capitalization in original; emphasis added.) The circuit court's order did not specify a time within which the parties were obligated to file the described report, other than "at the completion of" the arbitration; nor is it clear that separate reports by each party were required in order satisfy the court's directive. Further, the order did not by its terms require that the parties submit an actual copy of the award.
On January 3, 2008, the arbitration panel unanimously entered an award in favor of RJFS. On January 14, 2008, Honea filed with the circuit court a "Motion to Vacate the Arbitration Award." The motion to vacate detailed the findings and awards of the arbitrators and included allegations that the arbitrators had "manifest[ly] ... disregard[ed] the law."[14] Honea's filing *574 subsequently was described by the circuit court as follows:
"The Motion to Vacate contained various statements positively identifying the judgment, i.e., the award, appealed from, properly named the 'appellees,' and was filed in the appropriate court. The motion to vacate also contained various quotes from the Award and referenced the Award as Exhibit A thereto. The clerk's record, however, does not contain the exhibits referenced in the motion to vacate, including the Award."
On February 14, 2008, RJFS filed a response to Honea's filing in the circuit court. RJFS made no objection to any alleged failure or insufficiency of Honea's filing relative to the post-arbitration filing requirements imposed upon both parties by the circuit court's order. Nor did RJFS complain that Honea should be proceeding under some different, statutory, post-arbitration filing requirements that Honea's filing did not satisfy. Instead, RJFS simply responded on the merits to Honea's filing. Specifically, RJFS filed a written opposition in which it argued merely that the arbitrators had properly applied the law and that, even if they had not, any error did not justify a vacatur of the award because the error did not rise to the level of "manifest disregard of the law."
Furthermore, RJFS itself submitted to the circuit court as part of its filing a complete copy of the arbitration award. The award itself is rather brief and, consistent with the description of its terms set out in Honea's filing, reads, in material part, as follows:
"Claimant's claims for violation of § 8-6-19 of the Alabama Securities Act; statutory and common law fraud; breach of fiduciary duty; negligence; fraud; and wantonness are dismissed with prejudice.
"Claimant's claim for breach of contract is denied. The Panel makes an express finding that Respondent Michaud did not sufficiently know his client nor make sufficient inquiry to attempt to know his client, her holdings, and/or her investment experience. These failures contributed to losses in Claimant's account. However, Claimant's claims are all barred by the applicable statutes of limitations.
"....
"Any and all claims for relief not specifically addressed herein, including Claimant's requests for punitive damages and attorneys' fees, are denied."
As the circuit court later noted, the arbitration award itself, therefore, has been of record since February 14, 2008.
On February 27, 2008, the circuit court responded to the parties' post-arbitration filings with the following order:
"The parties having orally announced to the Court their inability to be prepared to argue the Motion to Vacate Arbitration Award previously filed herein and set for hearing before the undersigned ... due to the difficulty in securing a written transcript of the proceedings before the Arbitrator, the Order entered by this Court setting the hearing ... is hereby withdrawn and held for naught and the said hearing is hereby cancelled. The Plaintiff and Defendants are hereby ORDERED and DIRECTED to file with the Court a written request for status conference within ten (10) days upon receipt of the transcribed transcription of the proceedings before the Arbitrator."
(Capitalization in original.)
On October 17, 2008, Honea filed a "Submission in Support of Vacatur of Arbitration Award." In the submission, Honea argued that she was "entitled to a de novo review of the arbitration award made between *575 the parties hereto before this Court" based on the contractual provision quoted above. Honea attached a copy of the arbitration award as an exhibit to her submission.
On October 31, 2008, RJFS filed a response to Honea's submission. In addition to restating the arguments from its response to Honea's motion to vacate, RJFS argued that, despite the provisions in the parties' arbitration agreement providing for de novo review, Honea was not entitled to such a review in light of the United States Supreme Court's decision in Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).
Honea filed a reply to RJFS's response, arguing that, in light of the de novo-judicial-review provision agreed to by Honea and Raymond James as part of their arbitration agreement, RJFS had forgone the right to rely on the exclusivity provisions of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("the FAA"), as discussed in Hall Street. Honea contended that Hall Street did not preclude such a waiver, nor did it preclude such review of an arbitration award as may be available under state law. Honea further contended that, if the judicial-review provision of the parties' arbitration agreement was void, the entire arbitration agreement must fail because such review was an "important consideration" for the agreement. See Ex parte Warren, 718 So.2d 45, 48 (Ala. 1998) ("[W]here it is clear that a specific failed term of an arbitration agreement is not an ancillary logistical concern but, rather, is as important a consideration as the arbitration agreement itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail.").
On July 20, 2009, the circuit court entered an order citing the parties' arbitration agreement and concluding that Honea was entitled to de novo review by the court as provided in that agreement. The circuit court explained in its order:
"[T]he Supreme Court made it clear that its opinion in Hall Street'addressed ... only ... the scope of the expeditious judicial review under §§ 9, 10 and 11 of the FAA, deciding nothing about other possible avenues for judicial enforcement of arbitration awards.' Hall Street, supra, 128 S.Ct. at 1407.
"The Supreme Court went on to note the exceptions of state statutory and common law that may permit review. Id. Thus, the FAA does not preempt state law regarding proceedings to enforce or vacate arbitration awards. It applies only to proceedings under §§ 9, 10 and 11 of the FAA.
"Here, because neither party has sought expeditious judicial enforcement under §§ 9, 10 and 11 of the FAA, the issue addressed in Hall Street, the Court must consider Alabama law. The Alabama Arbitration Act provides for the review of arbitration awards essentially on the same grounds as the FAA. Thus, neither the FAA nor the Alabama Act would permit judicial review of an arbitration award. The Alabama arbitration statute does not preempt Alabama common law. In fact, the statute expressly reserves arbitration at common law. (See Ala. Code [1975,] § 6-6-16 ). As noted, the Supreme Court in Hall Street also stated that state common law may allow for review."
The circuit court thus concluded that the provision for de novo review by the circuit court, as agreed to by RJFS and Honea in the same agreement that provided for any arbitration at all, was enforceable under the common law according to its terms. Further, the circuit court concluded that,
*576 "[e]ven if the FAA did provide the exclusive grounds for the enforcement of arbitration awards, defendants have waived their right, and are estopped, to rely on the FAA's review provision.... By providing for appeal rights in the Agreement that are not included in FAA, defendants expressed their intention not to rely on the review rights provided by the FAA, and thus have waived their right to rely on the FAA."
The circuit court also stated:
"[T]he very provision that provided for arbitration of this dispute in the first place also provided for de novo review in this Court in the event of certain possible outcomes of the arbitration, one of which occurred here. Defendants moved to compel arbitration based on such arbitration provision, attaching the entire arbitration provision to its motion to compel arbitration. Defendants then obtained an order compelling arbitration based on such provision, but now ask this Court not to enforce all the rights thereunder. Estoppel operates to prevent such results."
(Emphasis added.) And, the circuit court further concluded,
"the arbitration provision ... formed one integrated provision of the Agreement. Because it is only one integrated provision, if any part thereof is to be severed, the entire arbitration provision is to be severed. ... To strike the review provision but to keep the other parts of the arbitration provision would thwart the object of the agreement to arbitrate."
Finally, the circuit court stated that the arbitration award was due to be vacated because the arbitration was not conducted pursuant to the applicable arbitration rules of the National Association of Securities Dealers. The circuit court's order concludes:
"Accordingly, it is hereby ORDERED and ADJUDGED as follows:
"1. That the arbitration award made between the parties hereto is hereby vacated; and
"2. A Status Conference is hereby set before the undersigned on AUGUST 28, 2009, at 10:00 a.m., to establish a schedule of deadlines for the entry of a Scheduling Order and Trial Setting, consistent with this Order."
(Capitalization in original.)
2. Raymond James I
RJFS appealed to this Court to challenge the circuit court's setting of the dispute for a trial. Significantly, RJFS argued that the parties' contract for de novo circuit court review of the arbitration award in certain categories of cases could not be enforced because it was preempted by the FAA, 55 So.3d at 1164-68, and, if not that, then by § 6-6-14, Ala. Code 1975, 55 So.3d at 1168.
Both the FAA and § 6-6-14 provide for relief from an arbitration award only on very limited and narrow grounds. In the case of § 6-6-14, our legislature provided for review only on grounds of "fraud, partiality, or corruption" and, in a companion statute, § 6-6-15, Ala. Code 1975, provided a mechanism for seeking relief from an appellate court on those grounds.[15]
*577 This Court rejected both of RJFS's arguments in Raymond James I. We specifically held that the arbitration provision agreed to by the parties, including specifically the provision for de novo review by the circuit court under certain defined circumstances, was enforceable in accordance with its terms under Alabama law. Raymond James I, 55 So.3d at 1169. We reversed the judgment of the circuit court, however, because it scheduled a trial instead of simply conducting "a de novo review of the transcript and exhibits of the arbitration hearing and ... enter[ing] a judgment based on that review" as required by the parties' agreement. 55 So.3d at 1170.
The holding of this Court in Raymond James I remains germane to the proper disposition of this dispute at the present time. It is worthy of repeating here, not only because of its explanation of Honea's entitlement to a de novo review by the circuit court, but because it reveals the absence of any challenge by RJFS to the manner or timing of Honea's post-arbitration filing in the circuit court. As Justice Stuart wrote for the Court at that time:
"The gravamen of RJFS's argument on appeal is that an Alabama court can vacate an arbitration award deciding a dispute involving interstate commerce and subject to the FAA only if one of the following grounds for vacatur enumerated in § 10(a) of the FAA is clearly established:
" '(1) where the award was procured by corruption, fraud, or undue means;
" '(2) where there was evident partiality or corruption in the arbitrators, or either of them;
" '(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
" '(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'
"In support of this argument, RJFS cites Hall Street [Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008) ], in which the Supreme Court of the United States considered the issue whether parties could, consistent with the FAA, expand by contract the grounds for judicial review of an arbitration award beyond those enumerated in § 10 of the FAA and answered that question in the negative. Honea, however, argues that the holding of Hall Street does not apply to this case.
"....
"It is accordingly clear that, post- Hall Street, the specific grounds enumerated in § 10 of the FAA are the only grounds upon which an arbitration award may be vacated under the FAA. However, Honea argues that an arbitration award may nevertheless be vacated upon grounds outside those enumerated in § 10 of the FAA if those other grounds are authorized by state statute or by common law. The Supreme Court of the United States expressly recognized this possibility in Hall Street.....
" '....'
"... Honea accordingly argues that even though agreements providing for *578 the expanded judicial review of arbitration awards may not be enforceable under the FAA, they are nevertheless enforceable under Alabama common law because Alabama courts have consistently held that general contract law requires that arbitration agreements be enforced as written. This principle was explained by this Court in Bowater Inc. v. Zager, 901 So.2d 658, 667-68 (Ala. 2004) :
" 'Section 3 of the FAA provides that, when a party to pending litigation successfully moves to compel arbitration, the trial court shall stay the proceeding "until such arbitration has been had in accordance with the terms of the agreement." Section 4 of the FAA likewise provides, in a situation where there is no pending litigation and a party desiring to compel arbitration petitions a court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement," that "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." Section 5 provides that "[i]f in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed...."
" ' "Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, see Mitsubishi [Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614], at 628 [ (1985) ], so too may they specify by contract the rules under which that arbitration will be conducted.... By permitting the courts to 'rigorously enforce' such agreements according to their terms, see [ Dean Witter Reynolds, Inc. v.] Byrd, [470 U.S. 213], at 221 [ (1985) ],we give effect to the contractual rights and expectations of the parties, without doing violence to the policies behind ... the FAA."
" ' Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).
" ' "...."
" '....'
"RJFS refutes Honea's argument on this point by arguing, first, that the FAA-not Alabama common law-governs the review of this arbitration award ....
"....
"Moreover, RJFS argues that, even if this Court does accept Honea's argument and apply the common law, the end result would be the same. Section 6-6-14, Ala. Code 1975, provides that an arbitration award in Alabama is final unless there is evidence of 'fraud, partiality, or corruption in making it,' and this Court has declared that this statute 'is but declaratory of the common-law rule on the subject.' Fuerst v. Eichberger, 224 Ala. 31, 33, 138 So. 409, 410 (1931). Thus, RJFS argues, courts reviewing arbitration awards under Alabama common law or statute are limited to the three grounds enumerated in § 6-6-14, which grounds it argues are even more narrow than those in § 10 of the FAA, and, it further argues, courts may not therefore engage in de novo review even if the parties have contractually agreed to such review. It is therefore ultimately immaterial, RJFS argues, whether the arbitration award in this case is reviewed pursuant to the FAA, *579 the [Alabama Arbitration Act], or the common law. For the reasons that follow, we disagree.
"In [ Birmingham News Co. v.] Horn, [901 So.2d 27 (Ala. 2004) ], we made clear that Alabama courts should apply § 10 of the FAA when moved to vacate or to confirm arbitration awards, even though § 10 was facially applicable only to federal district courts. 901 So.2d at 46. However, we refrained from holding that § 10 constituted substantive law that we were required by the FAA to apply in state court proceedings, stating that it was unnecessary to 'stumble over the distinction between substantive law and procedural law' because we had already adopted § 10'as applicable to an appeal of an arbitration award in this state, and we see no need to retreat from that position.' 901 So.2d at 46-47. However, in Hall Street, the Supreme Court of the United States acknowledged that state statutory or common law might permit arbitration awards to be reviewed under standards different from those enumerated in § 10, thus effectively stating that § 10 represents procedural as opposed to substantive law. We are accordingly at liberty to decide whether to apply § 10 in state court proceedings on motions to vacate or to confirm an arbitration award. We have heretofore done so; however, this case presents us with the situation we implicitly recognized in Horn in which there are good and sufficient reasons 'to retreat from that position.' 901 So.2d at 46-47. Under the Alabama common law, courts must rigorously enforce contracts, including arbitration agreements, according to their terms in order to give effect to the contractual rights and expectations of the parties. See, e.g., Bowater, supra.Applying that principle in this case requires us to give effect to the provision in the arbitration agreement authorizing a court having jurisdiction to conduct a de novo review of the award entered as a result of arbitration proceedings conducted pursuant to that same agreement."
55 So.3d at 1164-1169 (some emphasis original; some emphasis added; footnotes omitted).
Thus, in Raymond James I, we concluded that "the provision [of the parties' arbitration agreement] providing for de novo review of the arbitration award by the trial court is enforceable under state law." 55 So.3d at 1170. We then explained that,
"because the trial court vacated the arbitration award before conducting the de novo review required by the arbitration provision and contemplated by the parties, its judgment [had to be] reversed and the cause ... remanded for the trial court to conduct a de novo review of the transcript and exhibits of the arbitration hearing and to enter a judgment based on that review."
55 So. 3d at 1179.
3. In the Circuit Court on Remand from Raymond James I
On remand, the circuit court complied with this Court's mandate in Raymond James I. The circuit court conducted the de novo review called for by the parties' arbitration agreement and required by this Court's decision in Raymond James I. On November 3, 2011, the circuit court entered a thorough 27-page "Order and Final Judgment" that included detailed findings of fact (with references to the testimony and exhibits presented during the proceeding before the arbitrators), discussed pertinent law, and explained the basis for its independent, judicial adjudication in favor of Honea and against RJFS as to Honea's claims.
*580 Specifically, the circuit court's November 2011 order vacated the arbitration award and entered a judgment in favor of Honea and against RJFS in the amount of $1,169,113.35 as compensatory damages for "breach of contract, breach of fiduciary duty, breach of the Alabama Securities Act, fraud, negligence, and wantonness." The order denied Honea's request for punitive damages and attorney fees, and taxed costs against RJFS. In part, the circuit court's November 2011 judgment reads as follows:
"As shown above, this Court is in full accord with the [Arbitration] Panel's finding that RJFS breached its duties to HONEA and that such breach proximately caused HONEA's damages. The Panel erred, however, in finding that HONEA's claims are barred by the statutes of limitations. This action was filed on March 30, 2006. The trust relationship between RJFS and HONEA tolled the running of the limitation periods until HONEA's accounts were closed in 2006.... Thus, all claims are timely. ... [T]he contract claim is governed by a six-year limitations period meaning, of course, that all claims arising after March 30, 2000 were timely."
(Capitalization in original.) RJFS filed a notice of appeal, giving rise to Raymond James II.
4. Raymond James II
In Raymond James II, this Court never reached the arguments made by the parties regarding the merits of the independent adjudication that had been made on remand by the circuit court pursuant to our mandate in Raymond James I. Instead, following RJFS's filing of its notice of appeal in Raymond James II, the clerk of this Court issued an order for the parties to show cause as to why that appeal should not be dismissed for lack of jurisdiction in light of the Court's pre- Raymond James I decisions in Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala. 2008) (clarifying the process of appealing an arbitration award), and Championcomm.net of Tuscaloosa. Inc. v. Morton, 12 So.3d 1197, 1200 (Ala. 2009) (explaining Horton Homes ), among other cases. The parties filed responses to the show-cause order. RJFS argued that this Court should vacate the circuit court's judgment vacating the arbitration award and that RJFS's appeal should be dismissed for lack of jurisdiction "because of the circuit clerk's apparent failure to enter the arbitration award as the judgment of the circuit court, as required by both Ala. R. Civ. P. 71B and its predecessor, Ala. Code [1975,] § 6-6-15." (Emphasis added.)[16]
As noted above (see note 15, supra, and accompanying text), § 6-6-15 provided a process by which an arbitration award could be subjected to appellate review on the grounds prescribed in § 6-6-14. This process included the entry of the arbitration award as the judgment of the circuit court in order to put that award in a form amenable to such review.
In response to this Court's show-cause order, RJFS contended for the first time that the circuit court lacked subject-matter jurisdiction to consider the post-arbitration "return" made by Honea to the circuit court in 2008. This, despite the fact that that 2008 filing was made by Honea in an action (a) Honea had duly commenced in that court some two years earlier and (b) from which the order for arbitration, including a requirement that the parties file a "return" to the circuit court following the completion of arbitration, had emanated. Ignoring those aspects, RJFS, following *581 the lead provided by the order of this Court's clerk, posited, for the first time, that Honea's filing in the circuit court after the entry of the arbitration award did not qualify as a timely or proper filing under § 6-6-15. RJFS made this argument notwithstanding the lack of any expression of concern in this regard by it in Raymond James I and, to the contrary, its express representation to the circuit court that " '[w]e don't believe that a conditional judgment is required here or the entry of a conditional judgment is required here.' " Order of Trial Court, February 25, 2014, following Raymond James II (emphasis added). More particularly, RJFS made this argument in the face of the fact that the post-arbitration filing Honea made in the circuit court was not one by which Honea sought appellate court review of the arbitration award on the limited statutory grounds provided by § 6-6-14, nor one by which Honea sought to invoke § 6-6-14's tandem procedural statute, § 6-6-15, in an effort to initiate such an appeal. Instead, it was a "return" to the circuit court that Honea made (a) in an effort to comply with directive for such a return included in that court's order sending the case to arbitration in the first place and (b) in order to obtain a new and independent judicial adjudication based on the specially contracted-for de novo review by the circuit court under the parties' arbitration agreement. See Raymond James I, supra.
In response to RJFS's new position, Honea offered three alternative grounds for not dismissing the appeal:
"This appeal should not be dismissed because (i) § 6-6-15 does not apply to this 'common law' arbitration proceeding, (ii) the case can be remanded to the circuit court for entry of judgment on the arbitration award without dismissing the appeal under the teachings of Foster v. Greer & Sons, 446 So.2d 605 (Ala. 1984), and/or (iii) the failure to enter the arbitration award as the judgment of the court is a 'clerical error' which can be corrected pursuant to Rule 60(a), Ala. R. Civ. P., during the pendency of this appeal."
And, Honea added:
"Alternatively, in the event of dismissal of this appeal, precedent of this Court and fundamental principles of due process and equal protection require that Honea be given the right to invoke the arbitration award appeal process anew. (Ex post facto application of [such] a judicial decision [would] implicate[ ] the due process clause. Hunt v. Tucker, 875 F.Supp. 1487 (N.D. Ala. 1995), aff'd 93 F.3d 73[5 (11th Cir. 1996) ] ). This is so because of the confusing and unsettled nature of arbitration award appeal process at the time Honea filed her motion to vacate in the circuit court, i.e., January 14, 2008. Such condition of the law led (i) this Court to revamp the appeal process, and (ii) to the eventual amendment of Rule 71, Ala. R. Civ. P., effective February 1, 2009. The standard procedure for this Court in like cases has been to allow the appeal process to begin anew. See, e.g. Horton Homes, Inc. v. William Shaner H & S Homes, L.L.C.[, 999 So.2d 462 (Ala. 2008), and Jenks v. Harris, 990 So.2d 878 (Ala. 2008)."[17]
After receiving the parties' respective responses to our show-cause order, this Court dismissed RJFS's appeal. Specifically, the opinion in Raymond James II accepted *582 the position urged by RJFS that this Court lacked jurisdiction over the appeal because "the arbitration award to RJFS was not entered as a judgment of the trial court as required by § 6-6-15, Ala. Code 1975." Raymond James II, 141 So.3d at 1015. According to the opinion, "the trial court lacked subject-matter jurisdiction" to review the award; therefore, the judgment it had entered in favor of Honea on remand from Raymond James I would not sustain an appeal. Id.
5. In the Circuit Court Following Dismissal of the Appeal in Raymond James II
In an effort to proceed in a manner consistent with this Court's stated rationale in Raymond James II, Honea filed in the circuit court a "Motion for Clerk to Enter Judgment on Arbitration Award."[18] The motion requested that the Jefferson Circuit Court clerk enter judgment on the January 2008 arbitration award, which she attached as an exhibit to the motion. Contemporaneously with the filing of her motion, and likewise in an apparent effort to proceed consistently with our decision in Raymond James II, Honea filed a "notice of appeal." She attached as exhibits to this notice a copy of the arbitration award and "a disk containing the record from the arbitration proceedings."
On October 16, 2013, the Jefferson Circuit Court clerk entered a "Judgment," stating:
"Pursuant to Ala. Code, 1975, Sections 6-6-12 and/or 6-6-15 ; and Rules 71B and/or 71C of the Alabama Rules of Civil Procedure, the Arbitrator's Award of January 3, 2008 (attached hereto), is hereby entered as a judgment of the Court. Court costs are taxed to the Defendant pursuant to Administrative Order 08-0011, dated March 24, 2008."
On October 22, 2013, Honea filed a "Motion for De Novo Review of, and to Vacate, Arbitration Award." She cited Raymond James I for the proposition that she was entitled to a de novo review of the arbitration award pursuant to the common law and, specifically, the agreement setting the terms pursuant to which the parties had agreed to arbitrate their dispute in the first place. Honea's motion continued:
"This Court has previously (i) conducted the de novo review, (ii) vacated the arbitration award, and (iii) entered judgment for Honea, on the precise issues now before the Court, but such judgment has now been vacated by the Supreme Court of Alabama on the basis that the clerk had not first entered judgment on the arbitration award. Such error has now been cured. Accordingly, this matter is now ripe for adjudication."
(References to exhibits omitted.)
On October 24, 2013, RJFS filed a motion in the circuit court asking that court to dismiss Honea's post- Raymond James II filing. RJFS argued that Rule 71B now imposes a 30-day time limit (from receipt of notice of the arbitration award) for filing a "notice of appeal" and that, therefore, Honea's filing was untimely. As a result of this untimeliness, RJFS argued, Honea had waived her right to review of the arbitration award by the circuit court. Beyond any alleged waiver, however, RJFS went further to argue that the alleged *583 untimeliness of Honea's filing meant that the circuit court actually lacked subject-matter jurisdiction over Honea's action.
Honea responded to RJFS's motion. Deferring to the ruling of this Court in Raymond James II that § 6-6-15 was applicable, Honea argued that her motion was timely and that
"principles of equity, due process, and equal protection prohibit the retroactive application of either (i) Rule 71B which was enacted after Honea began the appeal process, or (ii) court decisions rendered after Honea moved to vacate the arbitration award."
Honea also noted that,
"[i]n Jenks v. Harris, 990 So.2d 878 (Ala. 2008), the Alabama Supreme Court, quoting from an earlier order entered in the case, stated 'the procedure for obtaining jurisdiction to review an arbitration award under § 6-6-15, Ala. Code (1975)[,] is far from clear,' 990 So.2d at 882. Thus, even though it dismissed the earlier appeal for lack of jurisdiction, the Court ordered that the appeal process start anew in the circuit court. ( Id. ) In Horton Homes v. Shaner, 999 So.2d 462 (Ala. 2008), the Alabama Supreme Court again noted that the procedure for obtaining jurisdiction to review an arbitration award under § 6-6-15 is far from clear. 999 So.2d at 464. Once again, the Court in Horton Homes permitted the appeal process to begin anew in the Circuit Court.
"Both Jenks and Horton Homes were decided after Honea filed her motion to vacate in the Circuit Court. In a like circumstance, the Alabama Court of Civil Appeals, instead of finding waiver, permitted the appeal process to begin anew in the circuit court because the procedure for appealing arbitration awards was unclear at the time of the tenants' initial appeal, and the law was subsequently changed following that appeal. Hurst v. Eagles Landing IV, Ltd., 20 So.3d 143 (Ala. Civ. App. 2009). In accord is Tuscaloosa Chevrolet, Inc. v. Guyton, 41 So.3d 95 (Ala. Civ. App. 2009).
"Accordingly, well-established, controlling precedent requires this Court to permit Honea to begin anew the appeal process."
Honea later filed a supplement to her response, adding that
"Honea had, in fact, complied with requirements of Ala. Code [1975,] § 6-6-15, at the time that she filed her motion to vacate on January 14, 2008. In that regard, § 6-6-15 requires that either party may appeal from an arbitration award when an action is pending, by filing with the circuit clerk a notice of appeal in the appropriate appellate court within 10 days after receipt of notice of the award. The notice of appeal, together with a copy of the award, shall then be delivered with the file and the clerk shall enter the award as judgment of the clerk. Honea complied with such statute by filing her motion to vacate in the circuit court within 10 days of her receipt of the award and attaching thereto the arbitration award.
"The fact that Honea's motion to vacate can also serve as the notice of appeal is clear. A notice of appeal is reviewed for substance, not form. Ex parte P & H Const[r]. Co., Inc., 723 So.2d 45 (Ala. 1998)."[19]
Honea further noted that "neither § 6-6-15 nor Rule 71B provides for any default *584 or waiver of appeal rights for the failure of the circuit clerk to enter judgment on the award in a timely fashion."
On February 21, 2014, Honea filed a motion for relief from judgment, invoking Rule 60(b), Ala. R. Civ. P. Although the circuit court never ruled on Honea's October 2013 "Motion for De Novo Review of, and to Vacate, Arbitration Award," Honea noted that "[i]f the 90 day limitation set forth in Rule 59.1 [, Ala. R. Civ. P.,] applies to these proceedings or was not otherwise tolled, Honea's Motion to Vacate was denied by operation of law on January 20, 2014."
On February 25, 2014, the circuit court entered an order concluding that Honea had timely filed her January 2008 motion to vacate and denying RJFS's motion to dismiss. In its order, the circuit court stated:
"On January 14, 2008, Honea filed a Motion to Vacate Arbitration Award ('Motion to Vacate') in the circuit court. The Motion to Vacate contained various statements positively identifying the judgment, i.e., the award, appealed from, properly named the 'appellees,' and was filed in the appropriate court. The motion to vacate also contained various quotes from the Award and referenced the Award as Exhibit A thereto. The clerk's record, however, does not contain the exhibits referenced in the motion to vacate, including the Award.
"On February 14, 2008, Raymond James filed its Opposition to the Motion to Vacate and attached a copy of the Award thereto. Thus, the arbitration award itself has been of record since February 14, 2008. Thereafter, Honea's Motion to Vacate was further briefed and then heard by this Court. During a hearing on Honea's right to de novo review, this Court inquired of the parties as to whether the clerk should enter judgment on the award. Raymond James' position [in 2008] was, 'We don't believe that a conditional judgment is required here or the entry of a conditional judgment is required here.' Transcript, pp. 68, November 7, 2008. Thereafter, by Order dated July 20, 2009, this Court granted Honea's Motion to Vacate and scheduled the de novo review as provided in the ... Agreement."
(Emphasis added.)[20]
Based on "the briefs of the parties, arguments of counsel, and the review of the *585 record," the circuit court concluded in its February 2014 order that Honea had complied with the requirements of § 6-6-15 in her January 2008 filing in that court. In addition to the foregoing explanation of its ruling, the circuit court added that, under § 6-6-15,
"only the notice of appeal[, not the arbitration award itself,] is required to be filed within 10 days. Such omission was, at most, a defect in the notice of appeal which results in dismissal only if prejudice can be shown. Raymond James, however, cannot show, nor has even argued, any prejudice resulting therefrom. Thus, Honea complied with such statute by filing her Motion to Vacate with the clerk within 10 days of the service of the award. As to the timeliness of seeking to have judgment entered on the award, there is no timetable for the clerk to enter judgment on the award. Even Rule 71B enacted after Honea had filed her appeal, provides no timetable for entry of the award. It does recite that judgment should be entered 'promptly', but neither § 6-6-15 nor Rule 71B provides for any default or waiver of appeal rights for the failure of the circuit clerk to enter judgment on the award in a timely fashion.
"Moreover, the arbitration award appeal process of Rule 71B cannot be applied to this case. Retrospective legislation is not favored by the courts and a statute will not be construed as retrospective unless language used in enactment is so clear that there can be no other possible construction."
(Emphasis added.) The circuit court also stated that "appellate court precedent and fundamental principles of due process, equal protection, and equity require that Honea be given the right to continue the arbitration award appeal process." (Emphasis added.)
On March 19, 2014, the circuit court entered an order purporting to schedule a hearing on Honea's October 2013 "Motion for De Novo Review of, and to Vacate, Arbitration Award." On April 10, 2014, this Court ordered the circuit court to stay the proceedings until the appeals were resolved.
Honea appeals from the October 2013 order of the circuit court adopting the 2008 arbitration award as its own judgment in an effort to respond to this Court's decision in Raymond James II. RJFS cross-appeals the circuit court's order denying its motion to dismiss and files a separate motion in this Court under Rule 27, Ala. R. App. P., to dismiss Honea's appeal.
B. Discussion
RJFS's cross-appeal and its motion to dismiss Honea's appeal raise issues of subject-matter jurisdiction based on the decision in Raymond James II and require this Court to review and to reexamine the holding in that case regarding subject-matter jurisdiction. RJFS asserts that, following our dismissal of the appeal in Raymond James II, the circuit court erred in finding that Honea had filed an adequate and timely notice of appeal under § 6-6-15, Ala. Code 1975, and that the circuit clerk had timely entered the arbitration award as the judgment of the court.[21] Thus, according *586 to RJFS, Honea made "incurably defective efforts ... to appeal th[e] award, [and therefore] the circuit court never had subject matter jurisdiction." In support of its argument, RJFS relies upon this Court's decision in Raymond James II and, consistent with that decision, asserts that Honea's "appeal" to the circuit court was not "perfected pursuant to the time and manner prescribed in the controlling statute" and thus must be dismissed. LeFlore v. State ex rel. Moore, 288 Ala. 310, 313, 260 So.2d 581, 583 (1972).
The fundamental problem with RJFS's argument-and for that matter with the overall posture of this case at the present time-is twofold. The first problem is the notion that any alleged errors by Honea as to the filing she made in the circuit court after the completion of arbitration implicated the subject-matter jurisdiction of the circuit court. The second problem with RJFS's position is the notion that Honea's attempt to exercise her right to " 'de novo' review" under the arbitration agreement was the same as an "appeal" under Alabama's arbitration statutes, § 6-6-1 et seq., Ala. Code 1975.
As to the first issue, this Court has described subject-matter jurisdiction as follows:
"Subject-matter jurisdiction concerns a court's power to decide certain types of cases. Woolf v. McGaugh, 175 Ala. 299, 303, 57 So. 754, 755 (1911) (' "By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought." ' (quoting Cooper v. Reynolds, 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870) )). That power is derived from the Alabama Constitution and the Alabama Code. See United States v. Cotton, 535 U.S. 625, 630-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (subject-matter jurisdiction refers to a court's 'statutory or constitutional power' to adjudicate a case)."
Ex parte Seymour, 946 So.2d 536, 538 (Ala. 2006).
Upon careful reflection, it appears that this Court mistakenly perceived a jurisdictional defect and raised that issue ex mero motu in Raymond James II. The circuit court acquired subject-matter jurisdiction over Honea's action when she filed her complaint and initiated this action on March 30, 2006. And the circuit court's jurisdiction over Honea's action continues until finally terminated by an order from that court or the equivalent of such an order by operation of law, e.g., Rule 59.1, Ala. R. Civ. P. The fact that the circuit court ordered the parties to arbitrate their dispute pursuant to their arbitration agreement did not divest the circuit court of subject-matter jurisdiction over Honea's action. That order merely stayed the circuit court's immediate exercise of its jurisdiction over Honea's action pending the decision of the arbitrators. And, in fact, that order specifically instructed the parties to make a return to circuit court by "fil[ing] an Arbitration Report herein at the completion of said Arbitration detailing all findings and awards of the Arbitrator so this cause may be disposed of at said time." (Emphasis added.)
Moreover, the decision in Raymond James II failed to take account of the fact that, from the beginning, Honea never attempted to file an appeal of the arbitration award under the standards and procedures provided in §§ 6-6-14 and -15. What Honea did following arbitration was to make a return to the circuit court as had been *587 ordered by that court and then ask that court to enter a new, independent adjudication based on a de novo review by it of the evidence pursuant to the express terms of the parties' arbitration agreement and pursuant to the terms of the circuit court's order that sent that case to arbitration and that contemplated its return to that court based on that agreement.
It is true that, in the wake of our decision in Raymond James II, both Honea and the circuit court sought, and Honea continues to seek, to fit the parties' January and February 2008 filings into the "holes" prescribed by § 6-6-15. But, all of Honea's attempts to persuade the circuit court, and now this Court, that her filings in early 2008 satisfied the post-arbitration filing requirements described in § 6-6-15 (and all of the circuit court's findings as to whether Honea's filings would satisfy the filing requirements described in § 6-6-15 ) were forced by the erroneous holding in Raymond James II that such statutory prerequisites were applicable in this case. But that holding failed to take proper account of the fact that, from the outset, Honea did not seek to appeal the arbitrators' award pursuant to Alabama's limited statutory standards and procedures. Instead, from the outset, Honea sought to have the circuit court conduct its own de novo review and, based on that review, to make its own, independent adjudication of the parties dispute and enter an entirely new"award," or "judgment," reflecting that adjudication.[22] In other words, from the beginning Honea sought simply to pursue the special avenue of de novo review by the circuit court of certain categories of disputes between her and RJFS as expressly agreed to by those parties in their arbitration agreement.
It is well settled, as we held in Raymond James I, that courts
" 'enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms,' and 'parties are generally free to structure their arbitration agreements as they see fit.' Volt Information Sciences, Inc. [v. Board of Trustees of Leland Stanford Junior Univ.], 489 U.S. [468,] 478-79, 109 S.Ct. 1248 [ (1989) ]."
Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala. 2000). And, this Court will "presume that the parties intended what they stated and will enforce the contract as written." Id.
In the present case, it is undisputed that the award at issue was made by arbitrators in a case that fell within one of the categories of circumstances that prevented that award from being binding and that triggered a right to a de novo adjudication of the parties' dispute by the circuit court (albeit by taking advantage of the evidentiary record developed in the course of the arbitration process). And we have been directed to no state law that precludes parties from agreeing to such a review, i.e., one that is different from that provided by the arbitration provisions of § 6-6-1 et seq., Ala. Code 1975, as to some or all the disputes that might arise between them. To the contrary, Ala. Code 1975, § 6-6-16, provides that "[n]othing contained in this division shall prevent any person or persons from settling any matters of controversy by a reference to arbitration at common law."[23]
*588 In short, the parties' arbitration agreement itself gave either party the right to obtain, in substitution for the arbitration award, an independent judgment of the circuit court based upon "a 'de novo' review" by the circuit court of the testimony and exhibits produced at the arbitration hearing. Honea timely invoked that right, and no law deprives the parties of the ability to contract for such a right. The circuit court never lacked subject-matter jurisdiction to conduct a review of the evidence and to enter an independent judicial judgment as agreed to by the parties, particularly in a case that was originally filed in that court, that was merely stayed by that court while the dispute was considered by the arbitrators, and that was sent to those arbitrators by that same court based solely upon an arbitration agreement that by its terms limited the types of disputes and outcomes as to which any resulting arbitration award would be binding. Honea sought merely to make a return of the case to the circuit court pursuant to the terms of the circuit court's own order (a) providing for such return in accordance with the parties' agreement and (b) contemplating the eventual disposition of the parties' dispute by the circuit court in accordance with the terms of that agreement.[24]
Section 12-2-13, Ala. Code 1975, expressly provides that "[t]he Supreme Court, in deciding each case when there is a conflict between its existing opinion and any former ruling in the case, must be governed by what, in its opinion, at that time is law, without any regard to such former ruling on the law by it." It is now well established that "[s]ection 12-2-13 abrogates the common law rule that principles decided and rulings made on appeal, however erroneous, are the 'law of the case' and govern the appellate court on a subsequent appeal in the same case." Papastefan v. B & L Constr. Co. of Mobile, 385 So.2d 966, 967 (Ala. 1980). This Court "is not barred from re-examination of a previous ruling upon a subsequent appeal of the same case" where justice requires that it correct a previous mistake. Id. See also, e.g., Ex parte Vest, 181 So.3d 1049 (Ala. 2015) (correcting this Court's mistake as to the denial of an earlier petition for a writ of certiorari).
This principle has been applied by this Court in the context of disputes over arbitration and in particular where, like here, a previous decision of this Court failed to give proper effect to the terms of the parties' arbitration agreement. In Ex parte Discount Foods, Inc., 789 So.2d 842 (Ala. 2001) (" Discount Foods II"), this Court determined that the Court's own opinion in Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala. 1998) (" Discount Foods I"), had *589 been in error. As we explained in Discount Foods II:
"This Court is not required under the doctrine of 'law of the case' to adhere to the decision in Discount Foods I. Generally, the law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case. The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided. See Murphy v. FDIC, 208 F.3d 959 (11th Cir. 2000) ; see, also, Blumberg v. Touche Ross & Co., 514 So.2d 922 (Ala. 1987). However, the law-of-the case doctrine does not in all circumstances require rigid adherence to rulings made at an earlier stage of a case. The doctrine directs a court's discretion; it does not limit a court's power. The law-of-the-case doctrine is one of practice or court policy, not of inflexible law, and it will be disregarded when compelling circumstances call for the redetermination of a point of law on a prior appeal; and this is particularly true when the court is convinced that its prior decision is clearly erroneous or where an intervening or contemporaneous change in the law has occurred by an overruling of former decisions or when such a change has occurred by new precedent established by controlling authority. See State v. Whirley, 530 So.2d 861 (Ala. Crim. App. 1987), rev'd on other grounds, 530 So.2d 865 (Ala. 1988) ; Callahan v. State, 767 So.2d 380 (Ala. Crim. App. 1999) ; Murphy v. FDIC, supra ; United States v. Escobar-Urrego, 110 F.3d 1556 (11th Cir. 1997) ; Heathcoat v. Potts, 905 F.2d 367 (11th Cir. 1990). The decision in Discount Foods I failed to give effect to the parties' contractual intent, as evidenced by the plain language of the arbitration provision; it, therefore, was clearly erroneous."
789 So.2d at 846 n. 4 (emphasis added).
Based on the foregoing, this Court should overrule Raymond James II and vacate the October 2013 judgment entered by the circuit court as a consequence of that decision. The circuit court has twice attempted to vacate the arbitrators' award and to enter a judgment on the merits in favor of Honea and against RJFS. The latter attempt was made after the circuit court had conducted the de novo review prescribed by the parties' agreement-and approved in Raymond James I. That attempt was thwarted by the decision in Raymond James II. I respectfully submit that we should recognize that decision as erroneous, overrule it, and reinstate the circuit court's de novo judgment entered on remand from Raymond James I.[25]
The main opinion, however, chooses the different tack of (1) leaving in place the decision in Raymond James II and its results-namely the voiding of the November 2011 judgment that clearly reflected the circuit court's independent, judicial adjudication as to Honea's claims based on that court's de novo review of the record-(2) upholding the October 2013 judgment (a) that, unlike a typical trial court judgment, became the judgment of the circuit court only due to the sui generis dictates of § 6-6-15 and the holding in Raymond James II that those dictates were applicable and (b) that is directly contrary to the November 2011 judgment, and yet (3) concluding that Honea still has received the benefit of a de novo review. I submit that Raymond James II complicated and made uncertain a case that was, at least by comparison, uncomplicated at the time of *590 our decision in Raymond James I. And today's decision, in my view, takes us yet another step away from the clarity of Raymond James I. I believe we should reverse field and return to our decision in Raymond James I.
It certainly appears that the denial by operation of law under Rule 59.1, Ala. R. Civ. P., of Honea's motion to vacate the October 2013 judgment was due to an oversight by the circuit court. See Part I.A.5., supra. In any event, because the issue put to the circuit court in Honea's postjudgment motion was her entitlement to a de novo decision by the circuit court, and because I believe the denial of that motion by operation of law erroneously denied Honea the de novo review to which she was entitled, I would vacate the judgment of the circuit court on that ground and reinstate the de novo judgment entered by the circuit court on remand from Raymond James I.[26] Because this approach does not reflect the view of a majority of the Court, however, and because the main opinion proceeds to address those merits, specifically the statute-of-limitations issue, I will do so as well.
II. Statute of Limitations
I agree with the majority's conclusions that the fiduciary relationship between RJFS and Honea was not that of a trustee and beneficiary of an express trust and that the special rule applicable to the tolling of the statute of limitations that was in place before 2006 as to such a beneficiary's claims is inapplicable to Honea's claims.[27] Accordingly, the two-year statute of limitations applicable to Honea's breach-of-fiduciary-duty claims bars those claims.
As to Honea's breach-of-contract claim, Honea is correct that AC, Inc. v. Baker, 622 So.2d 331, 334 (Ala. 1993), clearly supports her argument that claims alleging breaches of contract that occurred after March 30, 2000, were not barred by the six-year statute of limitations applicable to contract actions. See Ala. Code 1975, § 6-2-34(9). The plaintiffs in Baker filed their action on September 4, 1991, against Leon *591 C. Baker, a tax attorney; S. David Johnston, a certified public accountant; and Johnston, Joyce & Wiginton ("JJW"), the accounting firm in which Johnston was a partner. The cause of action as to Johnston and JJW arose out of errors they allegedly made in preparing tax returns for the plaintiffs from 1981 through 1985. This Court noted that
"[e]ach plaintiff contends that it purchased [equipment from a business owned by Coleman Leasing Corporation, a business owned by Baker,] solely in reliance on promises made by Johnston, JJW, and Baker that ownership of the equipment would provide legitimate tax deductions, through depreciation and interest expenses, to reduce each plaintiff's tax liability for the years 1981 through 1985."
622 So.2d at 332.
"In 1986, the Internal Revenue Service ('IRS') and the Alabama Department of Revenue audited the plaintiffs' tax returns and disallowed the income tax deductions related to the computer equipment for all of the years 1981 through 1985." Id. This Court specifically noted that, unlike the tax returns for the years 1981 through 1984, the 1985 tax return was filed on April 15, 1986, within six years from the date the plaintiffs filed their complaint. Id. at n.2. On appeal from a summary judgment entered in favor of Johnston and JJW, this Court considered "the propriety of the trial court's holding that the six-year statute of limitations barred the plaintiffs' breach of contract claims, except those claims based on the 1985 tax returns." Id. at 334 (emphasis added). In particular, the Court was concerned "with an issue of first impression in this State: whether the nature of the plaintiffs' agreements, as either entire contracts or separate contracts, impacts on the running of the statute of limitations." Id. In discussing the import of the distinction between how the statute of limitations would apply in the context of "separate contracts," a position urged by Johnston and JJW, this Court stated:
"If the agreements in this case constituted several, separate annual agreements under which Johnston and JJW prepared and reviewed the plaintiffs' tax returns from 1981 to 1985, then a breach of contract action accrued on each contract, individually, for purposes of the six-year limitations period, when performance under each contract was complete. Under this interpretation of the parties' contractual relationships, the trial court's judgment would be affirmed, because the statute of limitations would bar all of the plaintiffs' breach of contract claims except the claims based on the 1985 tax returns."
622 So.2d at 334 (citations omitted). In contrast to the position taken by Johnston and JJW, this Court noted that
"each plaintiff contends that the accounting services performed by Johnston and JJW from 1981 to 1986 and related to deductions taken on computer equipment should be treated as services rendered under an entire contract, spanning continuously from 1981 to 1986. Further, we infer from each plaintiff's argument that each is contending that if its relationship with Johnston and JJW constituted an entire contract, then the six-year limitations periods for its breach of contract action would not begin to run until April 15, 1986, when the last returns claiming deductions were filed."
Id. (emphasis added). The Baker Court continued:
"Although this Court has never addressed a continuing contract argument such as the one the plaintiffs in this case touch upon, several courts have recognized a 'continuing contract' doctrine for *592 determining when a breach of contract action on an entire contract accrues for limitations purposes. This doctrine has been applied most often to cases concerning payment for performance of services, to determine when the plaintiff's right to sue for payment occurred.
"However, this is not an action seeking compensation for services rendered; rather, [the plaintiffs] seek recovery for harm incurred from allegedly erroneous tax advice. An application of the 'continuing contract' doctrine to this case would toll the running of the limitations period until the last time the plaintiffs acted upon the defendants' advice. Further, although this Court has never applied a 'continuing contract' doctrine, it has recognized, in certain situations, a 'continuing tort' doctrine that operates to toll the running of the limitations period in tort cases until the date that the last injury occurred. However, this Court has expressly limited 'recovery for a continuous tort ... to those damages that occurred within the period of limitations.' [ Continental Cas. Ins. Co. v.] McDonald, 567 So.2d [1208,] 1216 [ (Ala. 1990) ] (citing Garrett [v. Raytheon Co.], 368 So.2d [516,] 521 [ (Ala. 1979) ] ; see American Mutual Liability Ins. Co. v. Agricola Furnace Co., 236 Ala. 535, 183 So. 677 (1938) ; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624 (1937). Too, despite the possibilities presented by the plaintiffs' continuing contract argument, this case presents no compelling reason that would dissuade us from placing a similar limitation upon a 'continuing contract' action, limiting it to those breaches that occurred during the six years before the action was filed. We, therefore, decline to apply a 'continuing contract' doctrine at this time."
622 So.2d at 334-35 (emphasis added; footnotes omitted).
In other words, the Baker Court declined to definitively decide whether it should recognize a "continuing-contract" theory because, even under such a theory, the Court would have "limit[ed] it to those breaches that occurred during the six years before the action was filed." Id. Baker in no way supports the conclusion that application of a continuing-contract theory bars recovery for breaches that occur less than six years before the action was filed so long as similar breaches occurred more than six years before the action was filed.[28]
*593 Also, in addressing the Baker plaintiffs' alternative argument, the Baker Court stated:
"[T]he plaintiffs argue that the limitations period applicable to their breach of contract claims did not commence running until the IRS in 1986 disallowed their deductions related to the computer equipment. Admittedly, the plaintiffs did not incur any actual damage until the IRS disallowed their deductions; however, the incurring of actual damages marks the commencement point for the running of the two-year limitations period applicable to professional malpractice actions. See Leighton Ave. Office Plaza, Ltd. v. Campbell, 584 So.2d 1340 (Ala. 1991) ; Stephens[ v. Creel], 429 So.2d [278,] 281 [ (Ala. 1983) ]. The statute of limitations on a contract action runs from the time a breach occurs rather than from the time actual damage is sustained. Stephens, 429 So.2d at 280.
"Accordingly, although the plaintiffs have made well reasoned and able presentations of authority supporting their claimed right to pursue a remedy for all of the contracts allegedly breached by Johnston and JJW, we conclude that the trial court properly held that the only claims not barred by the statute of limitations were the plaintiffs' breach of contract claims based on their 1985 tax returns. Therefore, we affirm the summary judgment for Johnston and JJW as to the plaintiffs' breach of contract claims against them."
Baker, 622 So.2d at 335 (emphasis added; footnote omitted). In other words, the Baker Court did not conclude that because the same type of breach (taking an improper deduction for the purchased computer equipment) had occurred in tax returns filed before the 1985 return, the Baker plaintiffs' cause of action must fail in its entirety. The Baker Court merely concluded that the statute of limitations applicable to each breach began when that breach occurred, rather than when actual damages from that breach were incurred.
In the present case, Honea cites us to pertinent portions of the record that reflect that RJFS was actively and aggressively executing trades in her account after March 30, 2000, and that those trades were in breach of RJFS's duties to her. The present case is not one in which the purchases in Honea's account and in violation of RJFS's duties to her were all made before March 30, 2000, and the losses as to those purchases merely did not occur until after March 30, 2000. Also, as RJFS noted at the outset of the arbitration proceeding:
"The account suffered a monthly loss in November 2000 of $404,949 and an additional loss of $352,626 in February 2001. At the end of February 2001 the cumulative loss in the account stood at $676,199. It is undeniable that [Honea] was on inquiry notice no later than March 2001 of her claims against RJFS (upon receipt of her February 2001 statement) given that her account had lost over 90% of its value in a four month period. Notwithstanding this fact, [Honea] waited over five years to bring the present claim."
(Emphasis omitted; emphasis added.) RJFS further noted that, "[a]t the end of October 2000, the account had a positive gain of $74,521. Thus, the account lost approximately $750,000 in value in the span of four months."
*594 Although it is true that Honea's account suffered considerable losses (and some gains) before March 30, 2000, as to purchases and sales of securities in violation of RJFS's duties to Honea that also occurred before March 30, 2000, the record fully supports the conclusion that some of the losses that occurred in Honea's account after March 30, 2000, were the result of breaches of duty that also occurred after March 30, 2000. The fact that earlier breaches of RJFS's duties might have given rise to earlier causes of action did not preclude the subsequent breaches from also giving rise to distinct causes of action, namely yet another purchase of an unsuitable investment, yet another excessive trade, yet another improper use of margin, etc.[29]
This Court rightly refuses to reject Honea's claims as to damages she incurred from those "breaches that occurred during the six years before the action was filed" merely because other breaches occurred more than six years before the action was filed.
Wise, J., concurs.

Rule 59.1 states: "No postjudgment motion filed pursuant to Rules 50, 52, 55, or 59 shall remain pending in the trial court for more than ninety (90) days, unless with the express consent of all the parties, which consent shall appear of record ...."

RJFS argues that under the authority of Moss v. Upchurch, 278 Ala. 615, 179 So.2d 741 (1965), a party must strictly comply with the requisites of § 6-6-15 and that the Court in that case refused to accept a motion to vacate an arbitration award as a notice of appeal. Moss, however, is inapposite. In that case, a party sought to confirm an arbitration award under what is now Ala. Code 1975, § 6-6-12. The opposing parties filed pleas in abatement, which were overruled. Those parties then appealed to this Court. In dismissing the appeal, this Court noted that an award filed under the predecessor to § 6-6-12 did not become an appealable judgment and that that Code section provided no means for an appeal. 278 Ala. at 618-19, 179 So.2d 741. Instead, the means to appeal an arbitration award were found in what is now § 6-6-15, and "[the] [a]ppellants did not invoke the aid of [the predecessor to § 6-6-15 ]." 278 Ala. at 619, 179 So.2d 741. The Court went on to state in dicta that the predecessor to § 6-6-15 contained "certain mandates" that must be met, and noted that there was no compliance with the predecessor to § 6-6-15 in that case because, among other things, "no notice of appeal was given." 278 Ala. at 619, 179 So.2d 741. Moss does not hold that a motion to vacate an arbitration award could not be considered a notice of appeal for purposes of § 6-6-15 -the predecessor to that Code section had not been invoked at all. Thus, Moss is not authority on that point.

There is no legal argument presented in the briefs on appeal contending that the time to rule on the motion to vacate was extended by the consent of the parties, as provided in Rule 59.1.

Honea notes that a denial of her motion is a completely different result from the trial court's previous judgment, despite the fact that the substantive issues did not change in the intervening two years. Although a hearing was held on the motion to vacate, it was clear that the trial court heard only RJFS's arguments as to whether it had jurisdiction to proceed and did not consider the merits of Honea's motion to vacate. In fact, the trial court later scheduled a second hearing to hear Honea's motion. As noted above, that hearing was stayed by this Court at Honea's request.

In Ex parte DuBose Construction, the trial court was directed by the Court of Civil Appeals to enter an order making specific findings of fact. The trial court instead dismissed the case. This Court held that the dismissal violated the appellate mandate and was thus void.

Even if the trial court's allowing the motion to be denied by operation of law had been inadvertent, it would be contrary to the above caselaw to treat that failure to rule differently from a situation where the trial court conducted a de novo review, decided that the motion to vacate should be denied, and then deliberately allowed the motion to be denied by operation of law instead of by express order. Unlike Ex parte DuBose Construction, no particular findings of fact were required to be included in any denial of the motion.

Rule 59(g) states:
"Presentation of any post-trial motion to a judge is not required in order to perfect its making, nor is it required that an order continuing any such motions to a date certain be entered. All such motions remain pending until ruled upon by the court (subject to the provisions of Rule 59.1 ), but shall not be ruled upon until the parties have had opportunity to be heard thereon."

In fact, it does not appear from the copy of the form in the record that any boxes were selected.

In holding that Honea, for purposes of Rule 59(g), demonstrated probable merit on some her claims, this Court should not be construed to express any opinion on the substantive merit of those claims.

As noted in the main opinion, Honea's only arguments as to the merits were found in a narrow argument related to whether she was entitled to a hearing on her postjudgment motion.

Rule 71B, Ala. R. Civ. P., now controls appeals from arbitration awards. It supersedes Ala. Code 1975, § 6-6-15, which previously controlled arbitration appeals and which, in Raymond James II, this Court held applied in this case, a case that originated before the adoption of Rule 71B.

Justice Murdock states that Honea attempted "to fit" the " 'holes' prescribed by § 6-6-15" "in the wake" of Raymond James II. 240 So.3d at 587. But as can be seen above, she specifically attempted to "fit" these "holes" in her very first post-arbitration filing, namely, "from the beginning," years before Raymond James II was decided. 240 So.3d at 586.

Raymond James II addressed what must occur under § 6-6-15, a Code section that has been superseded. Any precedent found in that decision will have little, if any, application in the future. Justice Murdock argues that the ex mero motu setting aside of Raymond James II is supported by Ex parte Discount Foods, Inc., 789 So.2d 842 (Ala. 2001). That case set aside a plurality opinion whose "precedential value" was "questionable at best." 789 So.2d at 845. Further, the plurality decision had been sub silentio disapproved in a subsequent decision. But Justice Murdock does not simply suggest that we overrule a prior decision and direct the trial court to apply new or corrected law, as was the case in Discount Foods; instead, he suggests that the entire procedural history of the case be rewound for a judicial mulligan. That is completely unnecessary-there were already two such second chances for a de novo review after Raymond James I and again after Raymond James II.

Honea's motion to vacate also sought an order authorizing discovery as to the alleged bias of one of the arbitrators.

Section 6-6-15 begins by stating that "[e]ither party may appeal from an award under this division" and then explains that a "[n]otice of appeal to the appropriate appellate court shall be filed" in the applicable circuit court. Upon such a filing, the arbitration award was to be "enter[ed] ... as the judgment of the court" and thereafter could be reviewed on appeal in the appellate court, "unless within 10 days the court shall set aside the award for one or more of the causes specified in Section 6-6-14." Section 6-6-15 was superseded effective February 1, 2009, by Rule 71B, Ala. R. Civ. P. See Committee Comments to Rule 71B.

As noted above, § 6-6-15 was supplanted effective February 1, 2009, by Rule 71B, Ala. R. Civ. P. See Committee Comments to Rule 71B. See note 15, supra.

In addition, responding to references by RJFS to Rule 71B along with § 6-6-15, Honea noted, "Rule 71B... became effective in February 2009, more than a year after Honea initiated her appeal in the circuit court. Thus, it does not apply here and was not made an issue in the Show Cause Order."

Although this Court's opinion in Raymond James II invoked § 6-6-15, which was the statutory scheme for appealing an arbitration award in effect in 2008 when the arbitration award was entered, in 2013, when this Court remanded the case in Raymond James II, § 6-6-15 had been supplanted by Rule 71B, Ala. R. Civ. P., which became effective on February 1, 2009. Honea referenced Rule 71B in her post-Raymond James II filings in the circuit court.

Honea notes that "the award was received on January 3, 2008, and the motion to vacate was filed on January 14, 2008, a Monday."

The order also states:
"During the pendency of this case, the Alabama Supreme Court decided Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala. 2008), and Jenks v. Harris, 990 So.2d 878 (2008), wherein the Alabama Supreme Court recognized that the procedure for obtaining jurisdiction to review an arbitration award under § 6-6-15, Ala. Code (1975), was far from clear. Jenks, supra, 990 So.2d at 882. In response, Rule 71B of the Alabama Rules of Civil Procedure was adopted, effective February 1, 2009, to establish the method for filing appeals from an arbitration award.
"As stated, Honea had, on January 14, 2008, moved to vacate the award. In addition, on October 15, 2013, in response to the dismissal of Raymond James' appeal to the Supreme Court [in Raymond James II ], Honea filed a notice of appeal of the award and a motion for the clerk to enter judgment on the award. On October 16, 2013, the clerk entered judgment on the award. On October 22, 2013, Honea moved to vacate the award. On October 24, 2013, Raymond James moved to dismiss the appeal. The hearing on Raymond James' motion to dismiss Honea's appeal was set for November 8, 2013. Thereafter, Raymond James moved to continue the hearing, and Honea consented thereto. Thereafter, the hearing was reset for, and held on, January 17, 2013. At the conclusion of the hearing, the parties requested until January 24, 2014, to file supplemental briefs and until February 7, 2014 to submit proposed orders. Due [to] weather conditions and other factors, the parties agreed to extend the time for filing briefs until February 7, 2014, and to submit proposed orders to February 19, 2014."
(Emphasis added.)

Although RJFS seeks to ground both of these particular assertions in the decision of this Court in Raymond James II, the decision to dismiss the appeal in that case provides no basis for either assertion. The opinion in Raymond James II did not address the timeliness of Honea's filing in the circuit court. The sole basis for that decision was the fact that the circuit court had not entered an order incorporating the arbitration award as its own judgment. See 141 So.3d at 1014-15. And as to this latter issue, the decision was based solely on the absence of such a judgment; this Court did not have before it, and it did not address, any issue as to time limits that might or might not be applicable to the entry by the circuit court of such a judgment. See id.

This new judgment by the court, not being an arbitration award, would in turn be subject to the normal rules of procedure, including the provisions for postjudgment motions and the normal mechanisms for subsequent appellate review.

The fact that, absent an agreement otherwise, a party who prevails in an arbitration proceeding pursuant to § 6-6-1 et seq. may file an arbitration award in a pending action such that the award "has the force and effect of a judgment, upon which execution may issue as in other cases," Ala. Code 1975, § 6-6-12, is not relevant under the circumstances before us. The parties did enter into such an agreement here.

Put differently, the purpose of the parties' arbitration agreement was to enable either party, if dissatisfied with certain arbitration awards, to intercept such an award and to seek instead a different, independent "award" from the circuit court. Nothing in the parties' agreement required, and it would make little sense to require (and it would elevate form over substance to deprive Honea of relief based on a failure of), the circuit court to enter as its "own judgment" an award that the parties have agreed will not stand because one of the parties has invoked its right to obtain from that same court a different-de novo-judgment. And it would put the circuit court in the position of "jumping" through the procedural "hoop" of entering a certain judgment as its own and then conducting a de novo review of the same matter.

Alternatively, we could remand this case to the circuit court to allow it the opportunity to reinstate its judgment entered in response to Raymond James I.

Alternatively, as noted, this Court could remand the case to the circuit court to allow it the opportunity to reinstate the judgment it entered on remand from Raymond James I. In either event, this Court should (1) examine this issue with the aid of the briefs filed by the parties in Raymond James II (of which this Court may take judicial notice), which briefs more fully address the merits of the statute-of-limitations issue itself than do the briefs in the current appeal (which focus primarily on the error of the circuit court in allowing Honea's postjudgment motion to be denied by operation of law) and/or (2) allow the parties to file supplemental briefs more fully addressing the merits of the circuit court's de novo judgment (including particularly the statute-of-limitations issue). I note that almost the entirety of the argument presented by RJFS in its brief as the appellant in Raymond James II was devoted to the merits-based issue of the statute of limitations. The merits of this issue similarly was the focus of Honea's brief as the appellee in Raymond James II, engendering over 20 pages of argument. In contrast, the briefs filed by the parties in this current appeal do not contain a similar full-throated discussion of the merits of this issue, but instead address it only briefly in relation to whether the circuit court's failure to conduct a hearing on Honea's postjudgment motion was harmless error under the probability-of-merit standard.

Before the enactment of § 19-3B-1005, Ala. Code 1975 (Act No. 2006-216), the two-year statute of limitations for claims alleging breach of fiduciary duty as to a trustee began " 'to run once the fiduciary relationship [wa]s terminated and possession of trust property by the trustee becomes adverse.' " Tonsmeire v. AmSouth Bank, 659 So.2d 601, 604 (Ala. 1995) (quoting and adopting the trial court's order). Under § 19-3B-1005(a), "[a] beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary or a representative of the beneficiary was sent a report that adequately disclosed the existence of a potential claim for breach of trust."

The position discussed in Baker is consistent with the general rule applicable to actions based on a defendant's breach of a contract under which that defendant has a continuing duty of performance. As explained in 54 C.J.S. Limitations of Actions § 199 (2010) :
"The right of action for breach of a continuing covenant accrues from day to day as long as the breach continues, and where a contract provides for continuing performance over a period of time, each breach may begin the running of the statute anew such that accrual occurs continuously. Consequently, the fact that a portion of the claim is barred by the statute of limitations will not prevent a recovery for the part which has not become barred at the time suit is filed. On the other hand, the continuing claims doctrine does not apply to a claim based on a single distinct event which has ill effects that continue to accumulate over time."
(Footnotes omitted; emphasis added.)
The plaintiffs in Baker were attempting to argue that Johnston and JJW's preparation of their yearly tax returns reflected not just a contract under which Johnston and JJW had a continuing duty, but an indivisible contract for services such that the limitations period would not begin to run until all services under the contract had been provided or the contract otherwise terminated. The rule in such a case is that "the limitations period usually does not commence until the contract is fully performed unless one party refuses to fulfill the contract or prevents the other party from performing." 54 C.J.S. Limitations of Actions § 199 (2010) (footnote omitted). The Baker Court correctly rejected the plaintiffs' attempt to characterize their agreement with Johnston and JJW as being indivisible, because even were it to address the agreement as a "continuing contract," the statute of limitations would bar plaintiffs' recovery as to the only claims at issue-those based on breaches that occurred more than six years before the filing of their actions.

For example, based on an account summary for the account in which Honea suffered most of her losses, in April 2000 Honea deposited $300,000 into the account. Honea had previously deposited $850,000 into the account between May 1997 and August 1999. As of March 31, 2000, the investments in the account were valued at $1,293,234. After Honea made the April 2000 deposit, funds from the account were used over the next several months to purchase numerous technology stocks, on margin, for an account that was already significantly overweighted in technology stocks. According to Honea's expert witness, both the weighting of the account and the use of margin during the period in question were in breach of RJFS's duties to Honea. The account thereafter lost 90% of its value, by RJFS's own admission. Even without considering continuing sale and reinvestment decisions made after March 30, 2000, as to funds deposited before March 30, 2000, how was it possible for RJFS to breach its duties as to the investment of the aforementioned $300,000 in deposited funds before they were actually deposited?
Viewed from another angle, the value of Honea's account on March 31, 2000, the first day of the six-year statute-of-limitations window applicable to the March 30, 2006, commencement of her lawsuit, was $1,293,234, while less than a year later, on February 28, 2001, the value of the account had diminished to $78,257.