PER CURIAM.
AFFIRMED. NO OPINION.
See Rule 53(a)(1) and (a)(2)(E), Ala. R. App. P.
Stuart, C.J., and Bolin, Wise, Bryan, and Sellers, JJ., concur.
Murdock, J., concurs specially.
Parker, Shaw, and Main, JJ., dissent.
MURDOCK, Justice (concurring specially).
Jason S. Corley appeals from a Mobile Circuit Court's order dismissing his action against Valerie A. Richardson, in her capacity as president of Bishop State Community College ("BSCC"), on the basis of sovereign immunity. This Court affirms that order of dismissal, and I concur in that affirmance.
The complaint in this case states:
"7. [Corley] has been employed by [BSCC] since 1996. [Corley] was initially hired in 1996 as a part time employee to teach night courses. In 1999, [Corley] applied for and was hired to a full time day teaching position.
"8. [Corley] agreed to an offer of employment approved by Dr. Yvonne Kennedy when it was presented to him by Marcella Simms on or about November 3, 1999. Dr. Yvonne Kennedy was [BSCC's] President and Marcella Simms was [BSCC's] Director of Human Resources at the time.
"9. [Corley's] employment agreement provided that he would be placed at Level I/B on [BSCC's] Salary Schedule upon his hiring. The employment agreement also required that as a condition of employment, [Corley] was required to complete his associate degree within one year of his employment date. As soon as he completed the associate degree, he would be moved to Level I/A.
"10. [Corley] completed his associate degree within the one year period and notified [BSCC] on August 9, 2000, that he should be moved to Level I/A on the Salary Schedule. [BSCC's] Technical Dean also requested that [Corley] be moved to Level I/A on August 11, 2000. [BSCC] did nothing.
11. [Corley] worked at [BSCC] and requested to be moved to Level I/A for the next fifteen (15) years. [Corley] continuously made requests to [BSCC's] presidents, to Simms, and to others in central administration either on his own or through [BSCC's] Technical Dean, Dr. Harry Holloway. During these 15 years, there was no movement in [Corley's] placement on [BSCC's] Salary Schedule. [BSCC's] presidency transitioned from Dr. Yvonne Kennedy to Dr. James Lowe to a period of interim and *813 acting presidents to Defendant Richardson.
"12. Finally, on October 1, 2015, Defendant Richardson moved [Corley] from Level I/B to Level 1/A.
"13. [Corley's] placement at Level I/A should have been made in 2000 following the completion of his associate degree.
"14. [Richardson's] failure to move [Corley] was in breach of his employment agreement with [BSCC] and has resulted in [Corley] not being appropriately compensated."
Corley sought "declaratory, mandamus, and injunctive relief ordering and requiring that [Richardson] pay [Corley] the compensation and employment benefits due him as if he had been placed at Level I/A since 2000."
Richardson filed a motion to dismiss Corley's action on the ground of sovereign immunity. As noted, the circuit court granted Richardson's motion.
In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court views the allegations of the complaint in the plaintiff's favor and seeks to determine whether, in light of those allegations, the plaintiff could prove any set of circumstances that would entitle the plaintiff to relief. See, e.g., Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993). That said, nothing in Corley's complaint fairly can be read as alleging that BSCC entered into a 16-year employment agreement with Corley, i.e., an agreement for a term lasting from 1999 to at least 2015.[1] Certainly, there is no express allegation to this effect in the complaint. Nor do I think such an arrangement-as opposed to a series of annual or shorter term contracts-can fairly be inferred from what is alleged, given Alabama law and common knowledge of practices in higher education. Yet, in order for Corley to have made a viable allegation as a matter of contract law for the backpay he now claims (or at least the last six years of it, see note 1, supra), we would in fact have to assume that Corley and his counsel have filed a complaint in the courts of this State alleging that in 1999 BSCC entered a contract pursuant to which BSCC bound itself to employ Corley for a term of 16 years and that it further obligated itself to pay Corley at a certain rate of pay for a period of 15 continuous years. Even if we assumed this, the circuit court's judgment dismissing the complaint would still be proper (again, leaving aside any statute-of-limitations issue) because the 15 years of service at issue would not have been rendered under circumstances that fall within the exception to sovereign immunity discussed in cases such as State of Alabama Highway Department v. Milton Construction Co., 586 So.2d 872 (Ala. 1991), and State Board of Administration v. Roquemore, 218 Ala. 120, 123-24, 117 So. 757, 760 (1928). Those cases involve the timely delivery to and acceptance by the State of goods or services as to which there is no dispute of conformity under the contract and as to which a sum certain is owed the vendor as a result, only to have the State then-i.e., after timely delivery of the conforming *814 goods or services-refuse payment to the vendor. The facts and circumstances of this case are the polar opposite of the circumstances in such cases.
Specifically, even if we were to assume that in November 1999 BSCC promised that in 2000 it would change the terms under which Corley would be employed if by then he had obtained his associate degree, the fact is that BSCC did not change those terms. Corley obviously was fully aware of that fact; he alleges he continued throughout the ensuing 15 years to ask that his pay be changed. Nonetheless, even as BSCC continued to refuse to change his rate of pay, Corley continued to work for BSCC at the originally agreed-upon rate of pay. He continued to work for BSCC year after year, fully aware that BSCC was rejecting his calls to be paid at a higher rate. Importantly, then, according to the allegations of the complaint, BSCC's alleged breach occurred before Corley delivered all or most of the 15 years' worth of services in question, not after he delivered goods or services under an undisputed contract, as was the case in Milton and Roquemore.[2]
This, in other words, is not a case where the contracting party timely delivered, and the State accepted, conforming goods or services under contractual terms that are acknowledged or undisputed, only to thereafter breach the contract by simply "stiffing" the "vendor" after the fact. To the contrary, the "vendor" here, Corley, continued to deliver services year after year, fully aware that BSCC did not intend to pay him under the contractual terms he now alleges existed. This is not the narrow ministerial-duty exception carved out by Milton and Roquemore. Unlike the circumstances in Milton and Roquemore, BSCC made clear to Corley that it did not intend to pay him under the terms he alleges it agreed to, and BSCC made its intention known before he delivered the services for which he now seeks compensation under his employment agreement, not after as in Milton and Roquemore. Corley just chose to return to his work with the college year after year anyway-for 15 years.

If that is Corley's allegation, and BSCC breached his employment agreement in August 2000, and thereafter continued breaching his employment agreement until October 1, 2015, the statute of limitations would appear to preclude his recovering much of his alleged backpay. See Ala. Code 1975, § 6-2-34(9) (providing six-year statute of limitations for actions on simple contract); AC, Inc. v. Baker, 622 So.2d 331, 334 (Ala. 1993) ; and Honea v. Raymond James Fin. Servs., Inc., 240 So.3d 550, 590 (Ala. 2017) (Murdock, J., concurring in the result in case no. 1130655 and dissenting as to case no. 1130590).

Even if Corley were alleging that BSCC failed to enter into a new contract (or a series of new annual contracts) on the terms Corley claims he was entitled to, this case would be quite different from Roquemore and Milton just on that ground.